# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

### Case No. 1:22-CV-00267-MR-WCM

| | |
|---|---|
| **BEARWATERS BREWING COMPANY,**<br><br>**Plaintiff,**<br><br>v.<br><br>**ASSURANT, INC. D/B/A AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA and PATTON, MORGAN & CLARK INSURANCE AGENCY, INC.,**<br><br>**Defendants.** | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PATTON, MORGAN & CLARK INSURANCE AGENCY, INC.'S MOTION FOR SUMMARY JUDGMENT** |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 7.1 of the Local Rules of Court for the Western District of North Carolina, Defendant Patton, Morgan & Clark Insurance Agency, Inc. ("PMC"), by and through undersigned counsel, hereby respectfully submits this Memorandum of Law in Support of its Motion for Summary Judgment.

## <u>NATURE OF THE CASE</u>

Plaintiff filed its Complaint in this matter on December 21, 2022. (D.E. 1). This is an action concerning the respective rights and obligations of the parties in connection with the existence and procurement of flood insurance for certain

property owned by Plaintiff BearWaters Brewing Company ("Plaintiff" or "BearWaters"). (D.E. 1).

At issue in this action is a policy of flood insurance issued to BearWaters by Assurant, Inc. d/b/a American Bankers Insurance Company of Florida ("American Bankers") under the National Flood Insurance Program ("NFIP"). This policy issued by American Bankers, NFIP policy number 7405901022, provided flood coverage for a one-story building located on property owned by BearWaters that, at the time of issuance of the subject policy on February 6, 2019, was located at 13 Penland Street in Canton, North Carolina (the "Storage Building") (the "subject policy"). (*See* Exhibit 1 at ¶¶ 8-14)[1]. The subject policy was procured for BearWaters by Patton, Morgan & Clark Insurance Agency, Inc. (*Ids.*).

Within its Complaint Plaintiff sought, *inter alia*, a declaratory judgment against Defendant American Bankers regarding the coverage available under the subject policy for certain property owned by Plaintiff. (D.E. 1 at pp. 4-5). Plaintiff also sought relief from PMC, in the alternative, on the grounds that PMC breached a fiduciary duty to Plaintiff by failing to "ensure adequate coverage was provided for BearWaters' assets." (D.E. 1 at p. 5).

---

[1] The Declaration of Connie Millsaps ("the "Millsaps Decl."), and the related exhibits included therewith, have been attached hereto as **Exhibit 1**.

On September 5, 2023, Defendant American Bankers filed a motion requesting that the Court enter summary judgment in its favor as to all of Plaintiff's claims against it. (D.E. 17). On January 16, 2024, the Court entered a Memorandum of Decision and Order granting American Bankers' motion for summary judgment. (D.E. 23).

The sole remaining cause of action in this matter is Plaintiff's alternative claim against PMC for breach of fiduciary duty. (D.E. 1 at p. 5). Plaintiff has based this cause of action on contentions that PMC, due to the special nature of a fiduciary relationship that allegedly existed between the two parties, had an elevated duty to advise Plaintiff on the types of insurance coverage it may need for adequate coverage of its assets. (*See* D.E. 1 at p. 5). Specifically, Plaintiff alleges in its Complaint that a special relationship existed between Plaintiff and PMC such that PMC was "in a position of confidence with respect to identifying proper [insurance] coverage for BearWaters['] needs," and that PMC therefore breached a fiduciary duty to Plaintiff by "failing to ensure adequate coverage was provided for BearWaters' assets." (*See* D.E. 1 at p. 5, ¶¶ 33-34).

There is no genuine dispute as to any material fact with respect to Plaintiff's cause of action against PMC for breach of fiduciary duty. Specifically, summary judgment should be entered because Plaintiff's breach of fiduciary duty claim against PMC is barred by the applicable three-year statute of limitations. In the

alternative, Plaintiff has not, and cannot, forecast any evidence with which to establish essential elements of its breach of fiduciary duty claim against PMC. Thus, PMC is entitled to the entry of summary judgment, as to all of Plaintiff's claims against it, as a matter of law.

## STATEMENT OF FACTS

Plaintiff's claims arise from flood damage sustained on August 17, 2021 (the "subject flood") to a two-story building, comprised of a primary floor and a basement, operated by Plaintiff as a brewery and restaurant and located on property owned by Plaintiff that at all times relevant to this action bore the address 101 Park Street, Canton, North Carolina (the "Brewery Building"). (*See* Exhibit 2 at 15:21-16:24; 27:22-28:14; *see also* Ex. 1 ¶5)[2]. This Brewery Building was purchased by BearWaters in October of 2017, and BearWaters opened the taproom to the public in June of 2018. (Ex. 2 at 29:15-17; 16:25-17:3).

Defendant Patton, Morgan & Clark Insurance Agency, Inc. ("PMC") is an insurance agency located in Canton, North Carolina. (*See* Ex. 2 at 65:17-23). In 2017, PMC procured a commercial package policy on behalf of BearWaters that was issued by Philadelphia Indemnity Insurance Company and had an initial effective date of April 6, 2017 (the "CP Policy"). (*See* Ex. 1 ¶ 5). The Brewery Building was

---

[2] A copy of select excerpts from the Transcript of the Rule 30(b)(6) Deposition of Plaintiff BearWaters Brewing Company, taken on March 7, 2024 in connection with this action, is attached hereto as **Exhibit 2**.

listed as a covered building in the policy declarations. (*Id.*). The CP Policy was not a flood insurance policy for the Brewery Building. (*See* Ex. 1 ¶¶ 4-6). At the time that the CP Policy was procured, BearWaters had a separate flood insurance policy for the Brewery Building which was not procured by PMC, but rather, by a Farm Bureau insurance agent. (*See* Exhibit 3 at 20:21-21:9)[3].

*PMC Procured Flood Coverage*
*for 13 Penland Street*

In December of 2018, PMC was asked to procure a policy of flood insurance for BearWaters in connection with BearWaters' purchase of real property that was then-located at 13 Penland Street in Canton, North Carolina. (*See* Ex. 1 ¶ 10). Located on this property was a one-story office/storage building with a slab on grade foundation (the "Storage Building"). (*Id.*). The Storage Building was the only building or structure located on the property. (*Id.*).

On December 31, 2018, Connie Millsaps, an insurance agent for PMC, prepared an application for issuance of flood coverage for the Storage Building for submission to American Bankers. (*See* Ex. 1 ¶ 10). That same day Ms. Millsaps forwarded the application to BearWaters for review and signature. (*See* Ex. 1 ¶ 10).

The application identified the address of the building to be insured under the flood policy as 13 Penland Street, Canton, North Carolina 28716. (*See* Ex. 1 at ¶ 12;

---

[3] A copy of select excerpts from the Transcript of the Deposition of Connie Millsaps, taken April 3, 2024 in connection with this action, is attached hereto as **Exhibit 3**.

*see also* Ex. A to Millsaps Decl.). The application also described the building to be covered under the policy as a one-story "office/storage" building with slab on grade foundation. (*Ids.*). Kevin Sandefur, the President for BearWaters Brewing Company, signed and executed the coverage application on February 6, 2019 and provided a copy to Ms. Millsaps. (*See* Ex. 2 at 131:9-133:22; Ex. 1 ¶¶ 13, 15; *see also* Ex. B to Millsaps Decl.).

Upon receipt of the application, American Bankers issued the subject policy for coverage of the Storage Building, NFIP policy number 7405901022, for a policy period starting on February 6, 2019 through February 6, 2020, with $121,000 in building coverage limits and no contents coverage. (*See* Ex. 1 at ¶¶ 14-16; *see also* Ex. C to Millsaps Decl.). The declarations page for the subject policy, consistent with its application, described the insured property as a one floor, slab on grade building for use as office/storage located at 13 Penland Street in Canton, North Carolina. (*See* Ex. 1 ¶16; *see also* Ex. C to Millsaps Decl.).

The subject policy issued by American Bankers was a Standard Flood Insurance Policy ("SFIP") issued pursuant to the rules and regulations governing the National Flood Insurance Program ("NFIP"). (*See* Ex. 1 ¶ 8; *see also* Ex. C to Millsaps Decl.). The terms of all SFIP policies, including those issued by American Bankers, are identical to the terms and conditions of the SFIP, which is a codified regulation. *See* 44 C.F.R. § Pt. 61, App. A(1), A(2), A(3). Applications and

Declarations for SFIP Policies pages are part of the actual policy. 44 C.F.R. § Pt. 61, App. A(2)(II)(C)(11). Declarations pages for SFIP policies, including the subject policy, reflect the information provided by the insured in its policy application. *Id*. Also included on the declarations page for SFIP policies is information including the term of the policy, limits on coverage, and the location where the insured building is to be found. 44 C.F.R. § Pt. 61, App. A(2)(II)(C)(11-13).

On February 6, 2019, a proof of purchase, receipt, and copy of the signed application was also provided to Kevin Sandefur. (*See* Ex. 1 ¶ 15). The proof of purchase documentation reminded Plaintiff that the 13 Penland Street property was the only structure covered under the policy. (*See* Ex. 1 ¶ 15; *see also* Ex. B to Millsaps Decl.).

A copy of the initial declarations for the subject policy was issued and delivered to Plaintiff on or around February 19, 2019. (*See* Ex. 1 ¶¶ 16-17; *see also* Ex. C to Millsaps Decl.). By description or by address, the Brewery Building was not mentioned anywhere within the declarations. (*See* Ex. 1 ¶¶ 16-18; *see also* Ex. C to Millsaps Decl.). According to Mr. Sandefur, he read the initial policy declarations upon receipt. (*See* Ex. 2 at 115:11-22). After receipt, BearWaters forwarded the subject policy declarations and any related documentation to their mortgage carrier, on whom it relied to alert BearWaters to any problems with needed coverage. (*See* Ex. 2 at 145:4-9).

BearWaters subsequently renewed the subject policy for the period from February 6, 2020 through February 6, 2021. (*See* Ex. 1 ¶¶ 19-20; *see also* Ex. D to Millsaps Decl.). It also renewed the subject policy for the period from February 6, 2021 through February 6, 2022. (*See* Ex. 1 ¶¶ 21-22; *see also* Ex. E to Millsaps Decl.).

On August 17, 2021, a flooding event caused damages to both the Brewery Building and the Storage Building. (*See* Ex. 2 at 80:15-20; 112:4-13). American Bankers denied coverage for damages to the Brewery Building under the subject policy. (*See* Ex. 2 at 151:9-18). BearWaters now seeks to recover from PMC for damages to the Brewery Building, claiming that PMC should have advised it that it did not have, and that it needed, flood insurance for the Brewery Building.

*BearWaters' Relationship with
Insurance Agencies other than PMC*

During the time period relevant to this action, BearWaters worked with multiple insurance agencies or brokers other than PMC to procure insurance coverage. (*See* Ex. 2 at 72:11-21; 160:10-161:2). BearWaters had significant relationships with other insurance agencies, including Farm Bureau and Stanberry Insurance Agency. (*See* Ex. 2 at 72:11-73:4; 122:21-123:12). In fact, BearWaters has identified approximately five other insurance agents and/or agencies that it has used during the course of its business to obtain policies of insurance. (*See* Ex. 2 at

160:10-161:7).

At the time of the subject flood, there were various types of insurance coverages in place that had been procured for BearWaters by Stanberry Insurance Agency. (*See* Ex. 2 at 50:23-51:8; 72:11-73:4; 178:11-16). According to Plaintiff, BearWaters first began working with Stanberry Insurance Agency in 2019. (*See* Ex. 2 at 71:15-21). Stanberry Insurance Agency has met with BearWaters to explain the different coverages that BearWaters had in place, what other types of coverages were available, and what other types of insurance coverages BearWaters should consider. (*See* Ex. 2 at 120:14-121:7). Stanberry Insurance Agency even consulted with BearWaters about the subject policy, including whether to make a claim under it for damages from the subject flood. (*See* Ex. 2 at 172:21-173:5).

PMC did not receive any benefit or consideration from BearWaters beyond the premiums for the policies that it procured on BearWaters' behalf. (*See* Ex. 1 ¶ 23). Further, at no point did BearWaters ever make an explicit request that PMC provide it with advice on other available coverages, either verbally or in writing, nor did PMC ever agree, or undertake, to provide such advice. (*See* Ex. 1 ¶ 24).

## <u>RELEVANT LEGAL STANDARD</u>

Once the moving party has made a properly supported motion for summary judgment, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. *See Sylva Dev. Corp. v. Calvert*

*County, Md.,* 48 F.3d 810, 817 (4th Cir. 1995). It is not enough to show that "*some alleged factual dispute*" exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

While courts must view the facts and inferences in a light most favorable to the non-moving party, the non-moving party may not rely merely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). It is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material issue for trial. *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). The non-movant's proof must then meet "the substantive evidentiary standard of proof that would apply at trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993).

When there is no genuine issue as to any material fact regarding whether the statute of limitations has run on a claim, summary judgment is proper. *See* S*trategic Outsourcing, Inc. v. Continental Cas. Co.*, 414 F. Supp.2d 545, 550 (W.D.N.C.)*, aff'd in part, rev'd in part on other grounds,* 274 F. App'x 228 (4th Cir. 2008) ("[w]here the facts are not in conflict, whether a cause of action is barred by the statute of limitations is a question of law, and summary judgment is appropriate.").

## ARGUMENT

**I.    PLAINTIFF'S SOLE CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY IS TIME-BARRED AND PMC IS THEREFORE ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW**

A claim for breach of fiduciary duty "must be brought within three years of the date of accrual," which is the date on which "the breach is discovered or when it would have been discovered with reasonable diligence." *See Catlin Specialty Insurance Company v. Tegol, Inc.*, Case No. 3:14-CV-00607-GCM-DCK, 2018 WL 4329293, *3 (Sept. 11, 2018 W.D.N.C.). "Whether a party used reasonable diligence is ordinarily a question for the jury . . . . However, when the uncontradicted evidence shows that a party had both the capacity and opportunity to discover the breach but did not do so, the absence of reasonable diligence is established as a matter of law." *Id.* (internal quotations and citations omitted).

In *Holmes v. Sheppard*, the North Carolina Court of Appeals addressed the issue of reasonable diligence within the context of procurement of an insurance policy by an agent. *See Holmes v. Sheppard*, 255 N.C. App. 739, 805 S.E.2d 371 (2017). In *Holmes*, the plaintiff, a landlord, brought claims against an insurance agent for procuring an insurance policy that contained a vacancy exclusion. *Id*. at 744, 805 S.E.2d at 375. The plaintiff alleged that he had asked the insurance agent to procure the requested coverage without a vacancy exclusion. *Id*. In support of his position, plaintiff testified repeatedly during his deposition that he "told [his agent]

he did not want to have another issue because of vacancy" following previous issues he had experienced when an insurer had denied a claim, made under a separate policy of insurance procured by the same insurance agent, because of a vacancy. *Id*.

Ultimately, the North Carolina Court of Appeals in *Holmes* found that the trial court had appropriately granted summary judgment as to the plaintiff's claim for negligent misrepresentation on the basis that the insured "could have discovered the truth . . . upon simple inquiry by reading the Policy." *Holmes*, 255 N.C. App. at 746, 805 S.E.2d at 376 (2017). The Court acknowledged that plaintiff had "repeatedly testified that he never read the [p]olicy," and noted that "[h]ad he read the [p]olicy, he would have learned it did not include a vacancy exclusion." *Id*.

In *Catlin Specialty Insurance Company v. Tegol, Inc., et al.*, this Court applied the analysis outlined in *Holmes* to a claim for breach of fiduciary duty. *See Catlin Specialty Insurance v. Tegol, Inc.*, Case No. 3:14-CV-00607-GCM-DCK, 2018 WL 4329293, *3-4 (Sept. 11, 2018 W.D.N.C.). In *Catlin*, the third-party plaintiff, an insured, brought claims against an insurance agent alleging that the agent breached a fiduciary duty it owed to the insured by not procuring a certain type of coverage that the insured had expressly requested. *Id*. at *3.

When the insured in *Catlin* initially contacted the agent seeking coverage for its business, it specifically requested coverage for trademark and copyright infringement. *Id*. at *1. The agent initially procured a policy that remained effective

for multiple years until the insured asked the agent to obtain a similar policy, without any changes, from a different insurance carrier. *Id*. The agent procured this policy as requested, and the policy at issue in *Catlin* was delivered to the insured. *Id*. A cover letter delivered along with the policy instructed the insured to "become aware of the coverages afforded by your policy." *Id*. The insured did not read the entire policy but merely skimmed over its language. *Id*. The policy did not include coverage for trademark or copyright infringement, but rather, it expressly excluded such coverage. *Id*.

In *Catlin*, this Court determined that the statute of limitations for the insured's breach of fiduciary duty claim began to run when the insured first received the policy at issue, because "a reasonably diligent entity would have discovered the alleged breach at that time." *Id*. at *3. Just as "in *Holmes*, at the time [the insured] received the policy, there was nothing preventing [it] from reading the policy[,]" but, "[d]espite that, [it] did not read the policy." *Id*. By failing to read the policy upon receipt, the insured failed to discover the trademark and copyright infringement exclusion at that time, though it clearly and easily could have. *See id*. Accordingly, this Court found that the insured "could have discovered the breach by use of reasonable diligence" upon initial receipt of the policy, and that the statute of limitations on the insured's claim therefore began to run at that time. *Id*.

Similarly, the statute of limitations on BearWaters' claim against PMC for breach of fiduciary duty began to run on February 6, 2019, the date the subject policy was issued.[4] BearWaters was, or should have been, aware at that time that the Storage Building was the covered building under the subject policy. The application for the flood insurance policy, signed by Kevin Sandefur on February 6, 2019, specifically stated that a one-story slab on grade foundation office/storage building located at 13 Penland Street was covered under the flood policy. The proof of purchase documentation provided to BearWaters by PMC on that same date confirmed this. BearWaters was also reminded of the scope of coverage under the subject policy when it received a copy of the policy declarations on or around February 19, 2019.

Not only is it clear by his signature that Mr. Sandefur read the coverage application for the subject policy, but Mr. Sandefur has conceded that he read the initial policy declarations upon receipt. Accordingly, BearWaters had the capacity and opportunity to discover the alleged breach it purports to foist on PMC on February 6, 2019.

---

[4]  At the very latest, as Plaintiff testified that it read the initial policy declarations upon receipt, the accrual date was February 19, 2019, the date that the initial declarations page was initially issued and delivered to Plaintiff. (*See* Ex. 1 ¶¶ 16-17; *see also* Ex. C to Millsaps Decl.).

The three-year statute of limitations applicable to Plaintiff's claim accrued on February 6, 2019 and therefore expired on February 6, 2022. Plaintiff's Complaint was not filed until December 21, 2022, over 10 months after expiration of the statute of limitations. Accordingly, BearWaters' breach of fiduciary duty claim against PMC is time-barred, and, on this basis alone, PMC is entitled to summary judgment as to Plaintiff's only claim against it.

**II.    ALTERNATIVELY, PMC IS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF HAS NOT AND CANNOT FORECAST ANY EVIDENCE SUFFICIENT TO ESTABLISH ALL OF THE ESSENTIAL ELEMENTS OF ITS CLAIM FOR BREACH OF FIDUCIARY DUTY.**

There is a distinction under North Carolina law between "the general rights and obligations of parties to an insurance action," and those obligations of a fiduciary that is "acting as a trustee or confidant" such that it has an elevated duty to advise. *State Farm Fire & Cas. Co. v. Darsie*, 161 N.C. App. 542, 550-51, 589 S.E.2d 391, 398-99 (2003). Simply put, insurance agents generally do not have a duty to advise an insured. *See id*.

As a standard rule, an insurance agent that undertakes to procure a policy of insurance requested by an insured has "a ***limited*** fiduciary duty to the insured, to wit, the agent must correctly name the insured in the policy and correctly advise the insured of the nature and extent of his coverage under the policy." *Cobb v. Pennsylvania Life Ins. Co.*, 215 N.C. App. 268, 275, 715 S.E.2d 541, 548 (2011)

(citing *Phillips by Phillips v. State Farm Mut. Auto. Ins. Co.*, 129 N.C. App. 111, 113, 497 S.E.2d 325, 327 (1998)) (emphasis added). Accordingly, the duty of an insurance agent to procure additional policies of insurance generally arises in the event that a request is made by the insured. *Phillips*, 129 N.C. App. at 113, 497 S.E.2d at 327.

When a fiduciary relationship between an insurance agent and an insured has not given rise to an elevated duty to advise, the duty of the insured to read the procured policy is triggered, and the insured is "held to be on notice of those terms in the policy which are otherwise clear and unambiguous." *Darsie*, 161 N.C. App. at 551, 589 S.E.2d at 399 (citing *Baggett v. Summerlin Ins. & Realty Inc.*, 143 N.C. App. 43, 545 S.E.2d 462 (2001), *rev'd per curiam*, 354 N.C. 347, 554 S.E.2d 336 (2001)).

To prove the existence of a duty to advise on the part of an insurance agent, a plaintiff must show that the agent and the insured had a so-called "special relationship" in one of three ways: "(1) the agent received consideration beyond mere payment of the premium; (2) the insured made a clear request for advice; or (3) there is a course of dealings over an extended period of time which would put an objectively reasonable insurance agent on notice that his advice was being sought and relied on." *Cobb*, 715 S.E.2d 541, 548.

Plaintiff has failed to present even a scintilla of evidence supportive of its contention that PMC had an elevated duty to advise BearWaters as to additional types of insurance coverages it could possibly need. Instead, the forecast of evidence on record is indicative that no "special relationship" existed between the parties giving rise to an elevated fiduciary duty on the part of PMC, and that PMC therefore owed no duty to BearWaters beyond the general duty owed by an insurance agent in North Carolina to procure insurance coverage upon a direct request of an insured.

PMC did not receive consideration from BearWaters beyond mere payment of the premium for the policies that PMC procured on its behalf. (*See* Ex. 1 ¶ 23). Plaintiff has failed to propound, or forecast, any evidence contradicting this or otherwise supporting a position that PMC received any other payment or consideration from BearWaters.

Similarly, it is undisputed that BearWaters never made a clear request for advice from PMC. Declarant testimony confirms that BearWaters has never requested that PMC provide it with advice on other available coverages, either verbally or in writing. (*See* Ex. 1 ¶ 24). Additionally, there is no evidence of any agreement between the parties that PMC would provide such advice.

Further, the forecast of evidence does not demonstrate a "course of dealings over an extended period of time" between the parties sufficient to give PMC constructive notice that its "advice was being sought and relied on" by BearWaters,

and Plaintiff has not provided any evidence suggesting that the dealings between the parties were extensive. In fact, the available evidence supports the opposite conclusion.

BearWaters first requested that PMC procure a policy of insurance on its behalf in 2017. BearWaters' request that PMC procure the subject policy, which was procured in 2019, was only the second occasion that it requested that PMC procure a policy of insurance on its behalf. Additionally, between the time the CP Policy was first requested by BearWaters and the time of the subject flood, BearWaters actively worked with multiple insurance agents and agencies other than PMC. At the time that the CP Policy was procured by PMC in 2017, there was a flood policy— procured by Farm Bureau— already in place for the Brewery Building.

Further, BearWaters has conceded that at the time of the subject flood, it had various active policies of insurance that had been procured by Stanberry Insurance Agency. BearWaters first began its relationship with Stanberry Insurance Agency in 2019. (*See* Ex. 2 at 71:15-21). Stanberry Insurance Agency advised BearWaters on the breadth of its existing coverage and other coverages it may need. These Stanberry agents even advised BearWaters following the subject flood regarding whether it should make a related claim under the subject policy--a policy which it did not procure.

BearWaters also relied its mortgager to advise it on the breadth of its existing coverage and as to additional coverage potentially needed by BearWaters. After receipt, BearWaters forwarded the subject policy declarations and any related documentation to their mortgage carrier, on whom it relied to alert BearWaters to any problems with needed coverage. (*See* Ex. 2 at 145:4-9).

In contrast, there is no evidence that PMC advised BearWaters as to additional available coverages, or as to other types of coverage it could possibly need. Additionally, an expert report was prepared in this matter by R. Bryan Tilden based on his review of facts and documents in this case. (*See* Exhibit 4; *see also* Ex. A to Tilden Decl.)[5]. It is Mr. Tilden's uncontroverted opinion, to a reasonable degree of professional certainty, that based on the responsibility and actions of both PMC and BearWaters, "PMC had no duty to advise BearWaters on additional types of coverage that it should seek, nor did PMC have a responsibility to take affirmative actions to procure coverage that BearWaters did not request." (*see* Ex. 4; *see* Ex. A to Tilden Decl. at p. 18). BearWaters did not designate an expert in this matter, and will therefore be unable to proffer contradictory expert evidence.

Based on the above, the evidence on record demonstrates that the nature of any "relationship" between PMC and BearWaters was clearly not exclusive or

---

[5] The Declaration of Brian Tilden (the "Tilden Decl."), and the related exhibits included therewith, have been attached hereto as **Exhibit 4**.

"special," and was a far cry from the type of long-standing relationship that would put PMC on notice that advice on BearWaters' general coverage needs was being sought and relied on.

Accordingly, based on the foregoing, there is no material dispute of fact between the parties regarding whether PMC owed an elevated duty to advise BearWaters, and therefore there is no genuine issue of material fact as to Plaintiff's claim against PMC for breach of fiduciary duty. PMC is thereby entitled to summary judgment as a matter of law.

## **CONCLUSION**

Based on the foregoing, Defendant Patton, Morgan, & Clark Insurance Agency, Inc. ("PMC") is entitled to summary judgment as to the only claim brought against it by Plaintiff BearWaters Brewing Company in the above-referenced action, and, as such, PMC respectfully requests that the Court grant its motion and enter summary judgment in its favor dismissing all of Plaintiff's claims against PMC with prejudice, and that the Court grant such other relief as it may deem just and proper.

Respectfully submitted this the 3rd day of May, 2024.

/s/ Caroline B. Barrineau
Jason R. Benton
NC State Bar No. 27710
Caroline B. Barrineau
NC State Bar No. 51571
PARKER POE ADAMS & BERNSTEIN LLP
620 S Tryon St., Suite 800
Charlotte, NC 28202
Telephone: 704-372-9000
Facsimile: 704-334-4706
Email: jasonbenton@parkerpoe.com
Email: carolinebarrineau@parkerpoe.com

*Counsel for Defendant Patton, Morgan & Clark Insurance Agency, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that the foregoing **Memorandum of Law in Support of Defendant Patton, Morgan & Clark Insurance Agency, Inc.'s Motion to for Summary Judgment** was electronically filed with the Clerk of the Court by using the CM/ECF System which will send notification and serve same upon counsel of record via the Court's electronic case filing system.

This the 3rd day of May, 2024.

/s/ Caroline B. Barrineau
Jason R. Benton
NC State Bar No. 27710
Caroline B. Barrineau
NC State Bar No. 51571
PARKER POE ADAMS & BERNSTEIN LLP
620 S Tryon St., Suite 800
Charlotte, NC 28202
Telephone: 704-372-9000
Facsimile: 704-334-4706
Email: jasonbenton@parkerpoe.com
Email: carolinebarrineau@parkerpoe.com

*Counsel for Defendant Patton, Morgan & Clark Insurance Agency, Inc.*