# EXHIBIT 4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION

## Case No. 1:22-CV-00267-MR-WCM

| | |
|---|---|
| **BEARWATERS BREWING COMPANY** | |
| **Plaintiff,** | |
| **v.** | **DECLARATION OF R. BRYAN TILDEN** |
| **ASSURANT, INC. D/B/A AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA and PATTON, MORGAN & CLARK INSURANCE AGENCY, INC.** | |
| **Defendants.** | |

Pursuant to 28 U.S.C. § 1746, I, R. Bryan Tilden, hereby state and declare under penalty of perjury as follows:

1. I am over the age of eighteen (18) and am under no disability which would render me incompetent to make this Declaration. I have personal knowledge of all the matters stated in this Declaration, and all statements made are true and correct.

2. The document marked as **Exhibit A** to my Declaration is a true and accurate copy of my expert report in this matter.

3. The document marked as **Exhibit B** to my Declaration is a true and accurate copy of my curriculum vitae.

Executed this __1__ day of ___May___, 2024.

_____R. Bryan Tilden_____
R. Bryan Tilden

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| BEARWATERS BREWING COMPANY, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| vs. | )  No. 1:22-cv-267 |
| | ) |
| ASSURANT, INC. D/B/A AMERICAN BANKERS | ) |
| INSURANCE COMPANY OF FLORIDA and PATTON | ) |
| MORGAN & CLARK INSURANCE AGENCY, INC. | ) |
| | ) |
| *Defendants.* | ) |
| | ) |

Prepared by R. Bryan Tilden, CPCU, CLU, ARM, ALCM, ChFC, CIC, SCLA
TILDEN AND ASSOCIATES
Pittsboro, North Carolina
October 27, 2023

1

# PREFACE

I, R. Bryan Tilden, offer the following report containing a statement of my opinions and the basis and reasons thereof, the data or other information considered in forming the opinions, my qualifications, and the compensation I am to be paid.

I have been retained by counsel for Patton, Morgan & Clark Insurance Agency, Inc. ("PMC") to review certain materials and to, in summary, provide my expert opinions relating to the procurement of certain policies of insurance and actions taken in connection therewith, all as described in detail in this report.

I have over 49 years of experience in the insurance and risk management industry as an author, agent, broker, consultant, underwriter, drafter of policy forms and endorsements, teacher, historian, claim examiner, and consultant for both the insured and insurers. As a broker representing the insured, I have placed accounts in the international insurance market, including coordinated placements with Lloyd's brokers, Lloyd's syndicates, United States, Canadian, British, and European insurance companies. I have worked with Lloyd's brokers, Lloyd's syndicates, United States, Canadian, British, Bermudian, and European companies in the drafting, underwriting, and placement of insurance policies marine and non-marine, and the adjustment of property and liability losses. I teach the construction, drafting, underwriting, adjusting, and analysis of insurance policies throughout the United States, Canada, Mexico, the Caribbean, Bermuda, and the European Union. I have written courses and have taught agents, brokers, underwriters and adjusters related to the structure of flood insurance policies. I have testified in the United States and London regarding the above subject matters. I am familiar with the international insurance and domestic marketplace's custom and practices, including the London, European, Caribbean, Canadian, Bermudian, and United States markets.

2

I am not an attorney, and nothing in this report should be construed as a legal opinion in any way. My opinions are based on customs and practices in the insurance industry that comes to bear on this matter. At the same time, it is not possible to review the handling of matters without reference to industry rules, regulations, policy terms and conditions, the claimed loss, and the transactions at issue. If any of the terminology or concepts used in this report has any overlap or congruence with legal terms, please be aware that the terms are not being used as legal terms; rather, they are used as terms of art within the insurance industry which are commonly used and understood in the industry.

My curriculum vitae are attached hereto as Exhibit A. I prepared this report after reviewing the documents listed below. My billing rate for consulting expert and expert witness work is $300 an hour.[1] Because discovery is ongoing, I reserve the right to supplement or amend this report based on the new information. These are my opinions to a reasonable degree of professional certainty.

## <u>DOCUMENTS PROVIDED</u>

1. Plaintiff BearWaters Brewing Company's Complaint;

2. Answer of Assurant, Inc. D/B/A American Bankers Insurance Company of Florida;

3. Answer of Patton, Morgan & Clark Insurance Agency, Inc.;

4. Patton, Morgan & Clark Insurance Agency, Inc.'s Rule 26(a)(1) Initial Disclosures;

---

[1] No portion of my compensation is dependent upon the result of this litigation.

3

5.  BearWaters Brewing Company's Rule 26(a)(1) Initial Disclosures;

6.  Rule 26(a)(1) Initial Disclosures of Defendant, Assurant, Inc. d/b/a American Bankers Insurance Company of Florida and documents produced therewith;

7.  BearWaters Brewing Company's Response to Defendant Patton, Morgan & Clark Insurance Agency, Inc.'s First Set of Interrogatories and Requests for Production of Documents and documents produced therewith;

8.  Philadelphia Indemnity Insurance Company Commercial Package Policy issued to BearWaters, Policy Number PHPK1636915, for policy period April 6, 2017 through April 6, 2018;

9.  Millsaps to Sandefur September 8, 2017, email re: information needed to quote flood insurance;

10. Philadelphia Indemnity Insurance Company Commercial Package Policy issued to BearWaters, Policy Number PHPK1802253, for policy period April 6, 2018 through April 6, 2019;

11. Jones to Sandefur September 14, 2018, email re: flood policy with other agency;

12. Email chain starting December 27, 2018, to December 31, 2018, re: flood insurance needed in connection with the purchase of 13 Penland Street property by BearWaters;

13. Email chain starting December 28, 2018, to February 5, 2019, related to quotation and procurement of flood insurance for 13 Penland;

4

14. Email dated February 6, 2019, Millsaps to National Capital Investment Fund and BearWaters with proof of purchase, receipt, copy of signed application for 13 Penland;

15. American Bankers New Business Flood Policy Declarations effective February 6, 2019, Policy Number 7405901022019 (NFIP Policy No. 7405901022);

16. Endorsement to Philadelphia Indemnity Insurance Company Commercial Package Policy, Policy Number PHPK1802253, effective February 7, 2019, adding 13 Penland building coverage;

17. Millsaps to National Capital Investment Fund February 25, 2019, email re: copy of flood policy for 13 Penland Street;

18. Philadelphia Indemnity Insurance Company Commercial Package Policy issued to BearWaters, Policy Number PHPK1966828, for policy period April 6, 2019 through April 6, 2020;

19. American Bankers May 30, 2019, policy change endorsement for change of insured mailing address change from 13 Penland to 101 Park Street, Policy No. 74059010222019 (NFIP Policy No. 7405901022);

20. O'Neil to Millsaps December 3, 2019, email chain requesting a change in listed Mortgagee to Newtek and requesting language allowing for a 10-day notice of cancellation;

21. PMC Customer Activities Listing for flood policy, Policy Number 74059010222019 (NFIP Policy No. 7405901022), re: refinance of 13 Penland and request to change listed Mortgagee to Newtek;

22. American Bankers December 6, 2019, policy change endorsement re: Newtek as mortgagee, Policy Number 74059010222019 (NFIP Policy No. 7405901022);

23. Sandefur to Millsaps January 28, 2020 email chain re: closing on refinance with Newtek and renewal of flood insurance; policy for 13 Penland;

24. American Bankers renewal flood declarations effective February 6, 2020, Policy Number 74059010222020 (NFIP Policy No. 7405901022);

25. American Bankers renewal flood policy declarations effective February 6, 2021, Policy Number 74059010222021 (NFIP Policy No. 7405901022);

26. Millsaps to American Bankers March 11, 2021, email re: amendment to property location address, change of building description to warehouse/storage, explaining deed transaction combining properties;

27. PMC Customer Activities Listing for flood policy, Policy Number 74059010222021 (NFIP Policy No. 7405901022), re: change of property location address from 13 Penland St. to 101 Park St.;

28. American Bankers revised renewal flood policy declarations processed March 19, 2021, Policy Number 7405901022021 (NFIP Policy No. 7405901022);

29. Millsaps to Newtek March 29, 2021, email re: copy of updated dec page showing amendment to property location address;

6

30. Millsaps to Newtek August 27, 2021, email re: copy of current flood declarations page;

31. Millsaps to Newtek September 22, 2021, email re: policies of flood insurance procured by PMC;

32. Letter from American Bankers to BearWaters December 23, 2021, re: claim denial letter stating Brewery Building not insured under 13 Penland Flood Policy;

33. American Bankers renewal flood policy declarations effective February 2, 2022, Policy Number 74059010222022 (NFIP Policy No. 7405901022); and

34. American Bankers renewal flood policy declarations effective February 2, 2023, Policy Number 74059010222023 (NFIP Policy No. 7405901022).

# **BACKGROUND**

BearWaters Brewing Company ("BearWaters") is a brewing business that owns and operates a brewery with three locations including one located at 101 Park Street, Canton, North Carolina.[2]   BearWaters also operates storefront locations in Waynesville, North Carolina and Maggie Valley, North Carolina.[3]   Additionally, BearWaters owns a storage building that is presently located on the same parcel of land as the building used for the Canton storefront, but

---

[2] Complaint, ¶ 9; https://www.bearwatersbrewing.com/, accessed October 17, 2023.
[3] https://www.bearwatersbrewing.com/, accessed October 17, 2023.

7

that was previously located on a separate parcel that had a street address of 13 Penland Street. Kevin Sandefur founded BearWaters, and Art O'Neil is an officer of the company.[4]

Patton, Morgan & Clark Insurance Agency, Inc. ("PMC") is an independent insurance agency located in Canton, North Carolina.[5] An independent agency is a business, operated for the benefit of its owner (or owners), that sells insurance, usually as a representative of several unrelated insurers. One such insurer is Assurant, Inc. d/b/a American Bankers Insurance Company of Florida ("American Bankers").[6]

1. *Prior to BearWaters' Purchase of 13 Penland Property*

In 2017, PMC facilitated the procurement of a commercial package insurance policy ("CPP") on behalf of BearWaters.[7] This policy was issued by Philadelphia Indemnity Insurance Company and had an effective date of April 6, 2017. This was not a flood insurance policy for the Brewery Building. This policy was renewed the following two years, but was canceled as of June 24, 2019, at the request of BearWaters.

At the time the policy was initially issued on April 6, 2017, the only building mentioned in the policy declarations was the storefront building located at 101 Park Street (the "Brewery Building"). On September 8, 2017, Connie Millsaps, an insurance agent working for PMC, advised Mr. Sandefur regarding whether the CPP included separate coverage for debris removal.[8] Ms. Millsaps advised Mr. Sandefur of PMC's need for a copy of BearWaters' current Farm

---

[4] https://www.bearwatersbrewing.com/, accessed October 17, 2023; O'Neil to Millsaps December 3, 2019, email chain requesting change in listed Mortgagee to Newtek and requesting language allowing for 10-day notice of cancellation.
[5] https://www.pattonmorganclark.com/our-mission, accessed October 17, 2023.
[6] https://www.pattonmorganclark.com, accessed October 17, 2023.
[7] Patton, Morgan & Clark Insurance Agency, Inc., Answer ¶ 10.
[8] Millsaps to Sandefur September 8, 2017, email re: information needed to quote flood insurance.

Bureau flood policy and elevation certificate for the property should he wish for PMC to quote a policy of flood insurance.[9]

In the insurance distribution system, a retail insurance agency gathers information from its customers, in this case, BearWaters. After obtaining the information from the customer, the application and attachments are sent to the insurance company. Though there is no evidence that BearWaters ever requested that PMC quote a flood insurance policy for the Brewery Building, PMC could not provide a quotation for flood insurance because no information was provided (a copy of the Farm Bureau policy and elevation certificate), by BearWaters.

About a year later, on September 14, 2018, another employee of PMC emailed Mr. Sandefur related to outdoor property being property not covered by the CPP and reminded Mr. Sandefur that the agency that procured BearWaters' flood policy should be contacted related to flood coverage.[10]

2. *13 Penland Property*

In late 2018, flood insurance was required in connection with BearWaters' acquisition of the property which was then located at 13 Penland Street in Canton, North Carolina.[11] As a condition of Federally insured mortgage loans, the lender must do a guaranteed flood zone determination. This applies to residences and businesses in Special Flood Hazard Areas ("SFHA") in participating communities.

---

[9] Millsaps to Sandefur September 8, 2017, email re: information needed to quote flood insurance.
[10] Jones to Sandefur September 14, 2018, email re: flood policy with other agency.
[11] Email chain starting December 27, 2018, to December 31, 2018, re: flood insurance needed in connection with the purchase of 13 Penland Street property by BearWaters; Email chain starting December 28, 2018, to February 5, 2019, related to quotation and procurement of flood insurance for 13 Penland.

9

A storage building was located on this property and was the only structure located on the property (the "Storage Building"), and PMC was asked to prepare a related quote.[12]    On December 27, 2018, the National Capital Investment Fund, Inc. ("National Capital Investment Fund") provided loan information to Ms. Millsaps for 13 Penland Street ("13 Penland") for the loan amount of $160,000, along with an appraisal for $121,000.[13]



On December 31, 2018, Ms. Millsaps provided a flood quotation for the Storage Building located at 13 Penland to Kevin Sandefur, Art O'Neil, Smathers Law, and the National Capital

---

[12] Email chain starting December 27, 2018, to December 31, 2018, re: flood insurance needed in connection with the purchase of 13 Penland Street property by BearWaters; Email chain starting December 28, 2018, to February 5, 2019, related to quotation and procurement of flood insurance for 13 Penland.

[13] Email chain starting December 27, 2018, to December 31, 2018, re: flood insurance needed in connection with the purchase of 13 Penland Street property by BearWaters.

Investment Fund.[14] Mr. Sandefur authorized the purchase of that policy for 13 Penland on February 5, 2019, and approved the quotation prepared by Ms. Millsaps.[15]

The insured, in the custom and practice of the insurance industry, will make the offer to the insurance company. After receipt by the insurance company, the underwriter has three options: 1) accept to offer, 2) modify the offer, or 3) decline to provide insurance by rejecting the offer. If any questions arise in the underwriting of the insured, the underwriter will contact the retail insurance agency who will in turn contact the insured.

By email dated February 6, 2019, Ms. Millsaps provided Kevin Sandefur and the National Capital Investment Fund proof of purchase, receipt, and copy of the signed application for 13 Penland signed by Mr. Sandefur.[16] Coverage was provided by American Bankers, a Write Your Own ("WYO") company that issues Standard Flood Insurance Policies ("SFIP") pursuant to the National Flood Insurance Program ("NFIP").[17]

American Bankers issued, as new business, this flood policy for the Storage Building located at 13 Penland, with Policy No. 74059010222019 (NFIP Policy No. 7405901022) (the "13

---

[14] Email chain starting December 28, 2018, to February 5, 2019, related to quotation and procurement of flood insurance for 13 Penland.

[15] Email chain starting December 28, 2018, to February 5, 2019, related to quotation and procurement of flood insurance for 13 Penland; Email dated February 6, 2019, Millsaps to National Capital Investment Fund with proof of purchase, receipt, and copy of signed application for 13 Penland.

[16] Email dated February 6, 2019, Millsaps to National Capital Investment Fund with proof of purchase, receipt, copy of signed application for 13 Penland.

[17] American Bankers Answer, ¶ 2; American Bankers New Business Flood Policy Declarations effective February 6, 2019, Policy Number 74059010222019 (NFIP Policy No. 7405901022).

11

Penland Flood Policy").[18]  A copy of the 13 Penland Flood Policy was sent to the National Capital Investment Fund representatives by email dated February 25, 2019.[19]

At the time the 13 Penland Flood Policy was issued, the property location listed on the declarations page was 13 Penland St, Canton, NC 28716-4317, and the building description included the terms "One Floor," "Slab on Grade," and "Office/Storage."[20]  The mailing address for the insured was listed as 13 Penland St.[21]

American Bankers processed a mailing address change to 101 Park on May 30, 2019, while the address for the location of the covered property remained listed as 13 Penland.[22]

*3.  13 Penland added to Commercial Package Policy*

On February 7, 2019, the Storage Building at 13 Penland was added to the CPP Policy issued by Philadelphia Indemnity Insurance Company as a warehouse with a $121,000 building limit and a $0 business personal property limit.[23]  The only other building listed in this policy was the Brewery Building at 101 Park Street ("101 Park").  As noted above, this policy was canceled as of June 24, 2019.[24]

---

[18] American Bankers New Business Flood Policy Declarations effective February 6, 2019, Policy Number 74059010222019 (NFIP Policy No. 7405901022).

[19] Millsaps to National Capital Investment Fund February 25, 2019, email re: copy of flood policy for 13 Penland Street.

[20] American Bankers New Business Flood Policy Declarations effective February 6, 2019, Policy Number 74059010222019 (NFIP Policy No. 7405901022).

[21] American Bankers New Business Flood Policy Declarations effective February 6, 2019, Policy Number 74059010222019 (NFIP Policy No. 7405901022).

[22] American Bankers May 30, 2019, policy change endorsement for change of insured mailing address from 13 Penland to 101 Park Street, Policy No. 74059010222019 (NFIP Policy No. 7405901022).

[23] Philadelphia Indemnity Insurance Company Policy Number PHPK1802253, endorsement effective February 7, 2019, adding 13 Penland building coverage.

[24] Patton, Morgan & Clark Insurance Agency, Inc., Answer ¶ 10.

*4. Refinancing 13 Penland with Newtek*

In late 2019, BearWaters began the process of refinancing the property it owned that was then located at 13 Penland St.[25] In connection with the refinance, Art O'Neil requested by email dated December 3, 2019 to Ms. Millsaps that the 13 Penland Flood Policy be changed to reflect Newtek Small Business Finance, LLC, ("Newtek") as mortgagee with a 10-day notice of cancellation.[26] Ms. Millsaps responded, with copies of part of the NFIP manual and a copy of the General Property Form, that a 10-day notice of cancellation was impossible for this type of policy.[27] The action was taken related to the change in the listed mortgagee, as requested, and on December 6, 2019, American Bankers issued a change endorsement reflecting Newtek as mortgagee.[28] Mr. Sandefur, in response to Ms. Millsaps' January 28, 2020 email, advised that the refinance with Newtek closed and that he had sent in the renewal of the 13 Penland Flood Policy for the policy period beginning February 6, 2020, through February 6, 2021.[29]

The 13 Penland Flood Policy was also renewed effective February 6, 2021, for a policy period through February 6, 2022, for $133,100 for building coverage.[30] At the time of this

---

[25] O'Neil to Millsaps December 3, 2019, email chain requesting change in listed Mortgagee to Newtek and requesting language allowing for 10-day notice of cancellation; PMC Customer Activities Listing for flood policy, Policy Number 74059010222019 (NFIP Policy No. 7405901022), re: refinance of 13 Penland and request to change listed Mortgagee to Newtek.

[26] O'Neil to Millsaps December 3, 2019, email chain requesting change in listed Mortgagee to Newtek and requesting language allowing for 10-day notice of cancellation.

[27] O'Neil to Millsaps December 3, 2019, email chain requesting change in listed Mortgagee to Newtek and requesting language allowing for 10-day notice of cancellation.

[28] American Bankers December 6, 2019, policy change endorsement re: Newtek as mortgagee, Policy Number 74059010222019 (NFIP Policy No. 7405901022).

[29] Sandefur to Millsaps January 28, 2020 email chain re: closing on refinance with Newtek and renewal of flood insurance policy for 13 Penland; American Bankers renewal flood policy declarations effective February 6, 2020, Policy Number 74059010222020 (NFIP Policy No. 7405901022).

[30] American Bankers renewal flood policy declarations effective February 2, 2021, Policy Number 74059010222021 (NFIP Policy No. 7405901022).

renewal, the property location listed on the declarations page was still 13 Penland Street in Canton, North Carolina.[31]

By email dated March 11, 2021, Ms. Millsaps requested that American Bankers amend the address for the property location from 13 Penland Street to 101 Park Street due to BearWaters completing a deed transaction that encompassed the property at 101 Park Street and the property at 13 Penland Street under one address: 101 Park Street.[32] A change in the building occupancy description from "office/storage" to "warehouse/storage" was also requested.[33] The revised declarations page was processed by American Bankers on March 19, 2021, showing 101 Park Street as the address for the property location.[34] On March 29, 2021, the revised declarations page showing this address change was sent to Newtek.[35]

5. *Flood*

BearWaters alleges that on August 17, 2021, the Brewery Building and Storage Building, then both located at 101 Park Street, were damaged by flooding from the Pigeon River.[36]

By email dated September 22, 2021, Ms. Millsaps forwarded a copy of the declarations page for the 13 Penland Flood Policy to Newtek with a reminder that PMC only writes flood coverage for the Storage Building (previously located at 13 Penland Street) and that PMC does

---

[31] American Bankers renewal flood policy declarations effective February 6, 2021, Policy Number 74059010222021 (NFIP Policy No. 7405901022).

[32] Millsaps to American Bankers March 11, 2021, email re: amendment to property location address, change of building description to warehouse/storage, explaining deed transaction combining properties.

[33] Millsaps to American Bankers March 11, 2021, email re: amendment to property location address, change of building description to warehouse/storage, explaining deed transaction combining properties..

[34] American Bankers revised renewal flood policy declarations processed March 19, 2021, Policy Number 74059010222021 (NFIP Policy No. 7405901022)..

[35] Millsaps to Newtek March 29, 2021, email re: copy of updated dec page showing amendment to property location address.

[36] Complaint, ¶ 21.

14

not write, nor has it ever written, flood coverage for the Brewery Building.[37]  BearWaters was notified on December 23, 2021, that the claim for the Brewery Building at 101 Park Street made under the 13 Penland Flood Policy was denied due to coverage only being provided for the Storage Building that was previously located at 13 Penland.[38]

# OPINIONS

My fundamental opinion is that Patton, Morgan & Clark Insurance Agency, Inc. met the standard of care expected of an insurance agent in procuring coverage for Bear Waters.

In custom and practice, PMC had a responsibility to use the skill and care which a reasonable and prudent person engaged in the insurance business would use under similar circumstances.[39]  Upon agreeing to facilitate the procurement a policy of flood insurance for the Storage Building at 13 Penland Street, as requested by BearWaters, PMC had a responsibility to correctly name BearWaters in the 13 Penland Flood Policy and to advise on the nature and extent of its coverage under the policy upon request.[40] However, an insurance agent need only procure the insurance the customer requested. Insurance Agents have no obligation to procure a policy which has not been directly requested by the customer, nor are agents obliged to assume such responsibility.[41]

---

[37] Millsaps to Newtek September 22, 2021, email re: policies of flood insurance procured by PMC.
[38] Letter from American Bankers to BearWaters December 23, 2021, re: claim denial letter stating Brewery Building not insured under 13 Penland Flood Policy.
[39] See *Mayo v. Amer. Fire & Cas. Co.,* 282 N.C. 346 (1972).
[40] See *Phillips v. State Farm Mut. Auto. Ins. Co.*, 129 N.C. App. 111, 497 S.E.2d 325 (1998).
[41] See *Phillips v. State Farm Mut. Auto. Ins. Co.*, 129 N.C. App. 111, 497 S.E.2d 325 (1998).

Insurance agents in North Carolina, like the rest of the United States, rely on a customer to perform certain duties, just as the customer relies on the insurance agent to perform certain duties.[42] Agents rely on their customers to perform the following:

1. Request the specific coverage desired, including, whether to insure a particular risk and the extent of coverage for that risk;

2. Determine which insurer(s) to use;

3. Determine which insurance agent(s) to use;

4. Complete applications or otherwise cooperate in the application process;

5. Review the application and update it as necessary;

6. After receiving the policy, review the policy and ensure that the particular provisions are acceptable;

7. Read the policy, and in doing so, ask for an explanation of any confusing provisions, and ask the insurance agent to change any unacceptable provisions;

8. If coverage needs to be changed, inform the insurance agent and ask for changes; and

9. Ask the insurance agent to renew the policy.[43]

---

[42] See *Baggett v. Summerlin Ins. & Realty*, 554 S.E.2d336 (N.C. 2001).
[43] Clarence E. Hagglund, J.D., *Insurance Producer Liability: In Plain Language,* (Minneapolis: Common Law Publishing, Inc., 1991).

There is no evidence on record that BearWaters ever requested that PMC assist with procuring a policy of flood insurance for the Brewery Building at 101 Park Street, and to the extent that BearWaters alleges that the 13 Penland Flood Policy should provide coverage for the Brewery Building at 101 Park Street, BearWaters failed to perform many of these responsibilities in connection with obtaining a policy of flood insurance for the Brewery Building.

A special relationship never existed between PMC and BearWaters because PMC never offered, nor did it ever to agree, to procure additional coverage or policies of insurance in connection with the Brewery Building located at 101 Park Street. It agreed only to procure flood insurance that was specifically requested by BearWaters for the Storage Building located at 13 Penland Street. The record reflects that PMC procured the requested insurance. There is no evidence that any compensation, beyond the mere payment of insurance premiums, was paid to PMC by BearWaters.[44] It would not be the custom and practice of insurance agents in North Carolina to explain coverage or to advise on additional types of insurance or coverage the customer should seek, unless requested by the customer. There is no evidence that such explanations or advice were requested here. Based on these objective criteria, it appears that an ordinary insurance agent- customer relationship existed between BearWaters and PMC.

Insurance agents are trained that if they agree to a particular task, such as to procure requested coverage, then the insurance agent should follow the customer's coverage instructions with reasonable skill, care, and diligence.[45] Reasonable care in following the customer's coverage instructions requires (1) accurately recording the client's answers to questions; (2) promptly submitting the application to the insurer; (3) diligently canvassing the insurance market

---

[44] See *Cobb v. Penn. Life Ins. Co.,* 215 N.C. App. 268, 274-75, 715 S.E.2d 541, 548 (N.C. Ct. App. 2011).
[45] See *Mayo v. Amer. Fire & Cas. Co.,* 282 N.C. 346 (1972)

for hard-to-place coverages; and (4) promptly informing the customer if the coverage is not available. Thus, an agreement to procure insurance is an agreement to use best efforts; it is not a guarantee of success. It is custom and practice for an insurance agent, such as PMC, to rely on the answers and information provided by the customer, here BearWaters, on the applications to insurance carriers, such as American Bankers. Insurance agents do not verify the representations on an application.

It is not the custom and practice of the insurance industry to explain a document to a customer or insured.[46] The Agency exercised good faith and reasonable diligence in obtaining the insurance that BearWaters requested which was flood coverage for the Storage Building at 13 Penland. The 13 Penland Flood Policy was underwritten and issued by American Bankers. There was nothing in the documents to show that BearWaters was relying on the advice of PMC. BearWaters never asked PMC to procure flood insurance for the Brewery Building, and therefore, PMC complied with the standard of care even though it did not procure flood coverage for the Brewery Building. PMC acted in good faith and followed the instructions of BearWaters, its customer.

Based on my review of the documents, I come to the inexorable opinion that PMC complied with its customers' requests and instructions and met the standard of care in the procurement of coverage for BearWaters. Based on the responsibilities and actions of both PMC as the insurance agent and BearWaters as the customer, PMC had no responsibility to advise BearWaters on additional types of coverage that it should seek, nor did PMC have a responsibility to take affirmative actions to procure coverage that BearWaters did not request.

---

[46] See *Wilmering v. Lexington Insurance Co.,* 678 S.W.2d 865 (1984), where the court held that there is no duty to explain an insurance policy to the insured.

The opinions outlined in this report by me are stated to a reasonable degree of professional certainty.

_R. Bryan Tilden_

R. Bryan Tilden

CPCU, CLU, ARM, ALCM, ChFC, CIC

# EXHIBIT B

*Curriculum Vitae*
*of*
### R. Bryan Tilden
526 Red Gate Road
Pittsboro, North Carolina 27312-7934
*Office:* 919.542.1042 • *Fax:* 919.542.6255 • *E-mail:* tilden@mindspring.com

| | |
|---|---|
| **EDUCATION:** | **Senior Claim Law Associate,** 2008<br>AMERICAN EDUCATIONAL INSTITUTE, INC.<br>Basking Ridge, New Jersey |
| | **Chartered Financial Consultant,** 1983<br>THE AMERICAN COLLEGE<br>Bryn Mawr, Pennsylvania |
| | **Associate in Loss Control Management**, 1983<br>INSURANCE INSTITUTE OF AMERICA<br>Malvern, Pennsylvania |
| | **Associate in Risk Management**, 1982<br>INSURANCE INSTITUTE OF AMERICA<br>Malvern, Pennsylvania |
| | **Chartered Life Underwriter**, 1982<br>THE AMERICAN COLLEGE<br>Bryn Mawr, Pennsylvania |
| | **Chartered Property Casualty Underwriter**, 1980<br>THE AMERICAN INSTITUTE FOR PROPERTY AND LIABILITY UNDERWRITERS<br>Malvern, Pennsylvania |
| | **Certified Insurance Counselor**, 1978<br>SOCIETY OF CERTIFIED INSURANCE COUNSELORS<br>Austin, Texas |
| **HONORS/ACTIVITIES:** | Active, Continuing Education for CPCUs, Society of Chartered Property Casualty Underwriters, 2021 - 2024 |
| | Grading Panel Member, The American Institute for Property and Liability Underwriters |
| | Grading Panel Member, Insurance Institute of America |
| | National Faculty Member, Society of Certified Insurance Counselors |
| | Faculty, ACORD Power of Change Workshop, 1995 to present |
| | Faculty, Independent Insurance Agents Virtual University, commentator to ISO, AAIS and ACORD |
| | Ernest F. Young Education Award, 1988 |
| | North Carolina Independent Agent of the Year, 1989 |
| | Frequent contributor the *The John Liner Letter* articles on Business Income, CGL, Auto, Risk Management |
| | Reviewer, various CPCU and Insurance Institute textbooks |

**MEMBERSHIPS:**     International Association of Arson Investigators

Professional Liability Underwriting Society

Society of Certified Insurance Counselors

Society of Chartered Property Casualty Underwriters

Society of Claims Law Associates

Society of Financial Service Professionals

**LICENSES:**     Property and Liability Agent, North Carolina, New Jersey, Wisconsin

Life and Health Agent, North Carolina, New Jersey, Wisconsin

Medicare Supplement and Long Term Care Agent, North Carolina

**EXPERIENCE:**     April 1997 to Present
**Training and Consulting**
Tilden & Associates
Pittsboro, North Carolina

September 1995 to March 1997
**Director of Technical Affairs**
Independent Insurance Agents of North Carolina, Inc.
Raleigh, North Carolina

March 1990 to August 1995
**Director of Education**
Independent Insurance Agents of North Carolina, Inc.
Raleigh, North Carolina

September 1983 to March 1990
**Account Executive**
Chapel Hill Insurance Agency, Inc.
Chapel Hill, North Carolina

September 1979 to July 1983
**Vice President**
Thomas Rutherfoord, Inc.
Roanoke, Virginia

December 1978 to September 1979
**Account Executive**
Marsh & McLennan, Inc.
Washington, DC

July 1974 to December 1978
**Account Executive**
Herb Holland Company, Inc.
Chapel Hill, North Carolina

**PUBLICATIONS:**     The CPCU Society. "A Guide to the CGL Aggregate Limits",
http://www.cpcusociety.org/learning/campus/how.shtml , 1999

The CPCU Society, "A Guide to the Motor Carrier Act",
http://www.cpcusociety.org/learning/campus/how.shtml, 1999

Case 1:22-cv-00267-MR-WCM   Document 31-5   Filed 05/03/24   Page 26 of 32

The CPCU Society, "A Guide to Value Reporting Form", http://www.cpcusociety.org/learning/campus/how.shtml. 1999

R. Bryan Tilden, *1999 Business Auto Policy, Changes and Issues* (Albany: Professional Insurance Agents, 1999)

----, *2000 Commercial Property Changes* (Malvern: The CPCU Society, 2000)

----, *2000 Homeowners Policy Changes* (Malvern: The CPCU Society, 2000)

----, *2001 Commercial General Liability Policy Changes* (Malvern: The CPCU Society, 2001)

----, *2001 Business Automobile Policy Changes* (Pittsboro, NC: Tilden and Associates, 2001)

----, *2002 Commercial Property Changes* (Malvern: The CPCU Society, 2002)

----, *2004 Commercial General Liability Policy Changes* (Malvern: The CPCU Society, 2004)

----, *2007 Commercial General Liability Policy Changes* (Malvern: The CPCU Society, 2007)

---- *2008 Commercial Property Changes* (Malvern: The CPCU Society, 2008)

----, *2010 Automobile Policy Changes* (Malvern: The CPCU Society, 2011)

----, *2011 Homeowners Policy Changes* (Malvern: The CPCU Society, 2011)

----, *2012 Commercial Property Policy Changes* (Malvern: The CPCU Society, 2013)

----, *2013 Commercial General Liability Policy Changes* (Malvern: The CPCU Society, 2013)

----, *Additional Insured* (Austin: Society of Certified Insurance Counselors, Inc., 1996, 2005, 2013; Malvern: The CPCU Society, 1999, 2001, 2004, 2005, 2013, 2019)

----, *Advanced Business Income* (Malvern: The CPCU Society, 1990 – 2016)

----, *Advanced Inland Marine* (Malvern: The CPCU Society, 2000)

----, *Advanced Pollution Liability* (Malvern: The CPCU Society, 1999 - 2021)

----, *Arson and the Insurance Contract* (Austin: Society of Certified Insurance Counselors, Inc., 1998, 2004, 2012, 2022)

----, *Bonus Life and Non-Qualified Deferred Compensation Plans* (Pittsboro, NC: Tilden and Associates, 1998)

----, *Budgeting* (Raleigh: Independent Insurance Agents of North Carolina, Inc., 1995)

R. Bryan Tilden and Donald Malecki, *Builders Risk, Wrap-Ups and Course of Construction* (Malvern.  The CPCU Society, 2006)

R, Bryan Tilden, *Business Automobile Coverage Part* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1993, 1994, 1997, 1999, 2002, 2004, 2005, 2006, 2010, 2013)

----, *Business Owner's Policy* (Austin: Society of Certified Insurance Counselors, Inc., 1990 – 2002, 2010, 2013)

----, *Claims Handling* (Pittsboro, NC: Tilden and Associates, 1999)

----, *Closing Gaps in Property Insurance* (Malvern: The CPCU Society, 1999, 2007, 2015)

----, *Commercial Account, The* (Malvern: The CPCU Society, 1999, 2001, 2005)

----, *Commercial Crime Program* (Austin: Society of Certified Insurance Counselors, Inc., 1988, 1991, 1992, 1999, 2000, 2006, 2013; Malvern: The CPCU Society, 2000, 2006, 2009, 2013)

----, *Commercial General Liability Coverage Part* (Austin: Society of Certified Insurance Counselors, Inc., 1989, 1992, 1994, 1996, 1997, 1998, 1999, 2001, 2004, 2007, 2013, 2019)

----, *Commercial Property Coverage Part* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1991, 1996, 2001, 2008, 2012)

----, *Commercial Property Causes of Loss Forms* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1991, 1996, 2001, 2008, 2012)

----, *Contract Bonds* (Pittsboro, NC: Tilden and Associates, 1999)

R. Bryan Tilden and Donald Malecki, *Contractual Risk Transfer* (Malvern. The CPCU Society, 2005)

R. Bryan Tilden, *Director's and Officer's Liability* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1997; 2002, 2022 Malvern: The CPCU Society, 1998, 2000, 2002, 2022)

----, *Disability Income and Long Term Care Insurance* (Pittsboro, NC: Tilden and Associates, 2006)

----, *Employee Leasing – The New CGL.* Counselor C93 #6 December (1993): 1-4

----, *Employment Related Practices* (Pittsboro, NC: Tilden and Associates, 1999, 2011, 2015)

----, *Endorsements to the Commercial Property Coverage Part* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1991, 1996, 2001, 2008, 2012)

----, *Essentials of Legal Liability* (Austin: Society of Certified Insurance Counselors, Inc., 1995)

----, *Essentials of Life Insurance* (Raleigh, NC: Independent Insurance Agents of North Carolina, Inc., 1991)

----, *Estate Planning* (Pittsboro, NC: Tilden and Associates, 1999)

----, *Estate Planning Techniques, Gifts, Trusts and Family Limited Partnerships* (Pittsboro, NC: Tilden and Associates, 2000)

R. Bryan Tilden and Donald Malecki, *Evolution of the CGL* (Malvern. The CPCU Society, 2007)

Case 1:22-cv-00267-MR-WCM    Document 31-5    Filed 05/03/24    Page 28 of 32

R. Bryan Tilden, *Excess Liability and Commercial Umbrella Policies* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1995, 1997, 2013)

----, *Flood Insurance*, (Austin: Society of Certified Insurance Counselors, Inc., 1998)

----, *Garage Policy* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1993, 1994, 1998, 2006)

----, *Hidden Coverages* (Austin: Society of Certified Insurance Counselors, Inc., 1995, 1997, 2000; Malvern: The CPCU Society, 1998, 2004, 2010, 2013, 2022)

----, *Homeowner's Policy* (Pittsboro, NC: Tilden and Associates, 1998, 2001, 2011)

----, *Homeowner's Tricks and Traps* (Austin: Society of Certified Insurance Counselors, Inc., 1989, 1993, 1997, 2001, 2013, 2022)

----, *How to Determine the Financial Stability of an Insurance Company* Agents Journal Spring (1985) 18 - 19

----, *Human Resources* (Raleigh: Independent Insurance Agents of North Carolina, Inc., 1996)

----, *Insurance Fraud* (Pittsboro, NC: Tilden and Associates, 2001)

----, *Insurance Statute and Rules Update, An Agents' Guide* (Raleigh: Independent Insurance Agents of North Carolina, Inc., 1991)

----, *Insuring Contractors* (Malvern: The CPCU Society, 1998, 1999, 2004, 2007, 2013)

----, *Insuring Defective Construction* (Malvern: The CPCU Society, 2002, 2004, 2007, 2013; Austin: Society of Certified Insurance Counselors, 2002, 2004, 2007, 2013, 2019)

----, *Insuring the E-Commerce Account* (Malvern: The CPCU Society, 2000 – 2023)

----, *Insuring the In Home Business* (Austin: Society of Certified Insurance Counselors, 1998)

----, *Insurance Valuation Problems* (Malvern: The CPCU Society, 1997 – 2021)

----, "It's a Crime Not to Insure! Use New Crime Forms for the Best Coverage," *Resources* (The National Alliance for Insurance Education & Research), (Spring 2001), pp. 10-13.

----, *Law and the Life Insurance Contract* (Pittsboro, NC: Tilden and Associates, 2002)

----, *Leased Properties Exposures* (Austin: Society of Certified Insurance Counselors, Inc., 1989, 1997, 2005; Malvern: The CPCU Society, 1998, 2001, 2005, 2013)

----, *Liability Issues and Solutions* (Austin: Society of Certified Insurance Counselors, Inc., 1998)

R. Bryan Tilden and Donald Malecki, *Malecki and Tilden on the CGL,* (Malvern. The CPCU Society, 2003, 2004, 2005)

R. Bryan Tilden, *Medicare Supplement and Long Term Care* (Raleigh, NC: Independent Insurance Agents of North Carolina, Inc., 1991, 1992)

----, *Mergers, Acquisitions, and Joint Ventures* (Malvern:  The CPCU Society, 2001; Austin: Society of Certified Insurance Counselors, Inc., 2002 – 2023)

----, *More Personal Lines Questions and Answers* (Pittsboro, NC: Tilden and Associates, 1997)

----, *N.C. Insurance Statutes and Rules Update, An Agents' Guide* (Raleigh: Independent Insurance Agents of North Carolina, Inc., 1992)

----, *Personal Auto Policy* (Raleigh: Independent Insurance Agents of North Carolina, Inc., 1990, 1993)

----, *Personal Auto Policy* (Pittsboro, NC: Tilden and Associates, 1999)

----, *Personal Lines Questions and Answers* (Malvern: The CPCU Society, 1997, 1998, 2012)

----, *Personal Lines, Troublesome Problem Areas* (Indianapolis: Independent Insurance Agents of Indiana, 1997, 1998)

----, *Pollution Liability Coverages* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1991, 1998, 2012)

----, *Pollution and Environmental Liability Coverages* (Malvern: The CPCU Society, 1999 – 2021)

R. Bryan Tilden and John P. Young, *Pre-Licensing Guide* (Raleigh: Independent Insurance Agents of North Carolina, Inc., 1988, 1993)

R. Bryan Tilden, *Professional Liability* (Austin: Society of Certified Insurance Counselors, Inc., 1994, 1996, 1998)

----, *Problems and Solutions in Buy-Sell Agreements* (Pittsboro, NC: Tilden and Associates, 1998).

----, *Products and Completed Operations* (Malvern: The CPCU Society, 1999)

----, *Properly Insuring Churches, Clubs, Civic Groups and Other Not-For-Profit Organizations* (Austin: Society of Certified Insurance Counselors, Inc., 1991, 1998, 2001)

----, *Property & Liability Innovations and Solutions* (Austin: Society of Certified Insurance Counselors, Inc., 1998, 1999, 2001)

----, "Puzzled About Commercial Auto?" *Resources* (The National Alliance for Insurance Education & Research), (Fall/Winter 2001), pp. 8-9.

----, *Rental Car Exposures and Coverages* (Austin: Society of Certified Insurance Counselors, Inc., 1988, 1990, 1992, 1999)

----, *Shared Ownership of Property* (Austin: Society of Certified Insurance Counselors, Inc., 1989, 1990, 2001)

----, *Small Employer Group Benefits* (Raleigh, NC: Independent Insurance Agents of North Carolina, Inc., 1992)

----, *Solving Troublesome Liability Issues* (Austin, Society of Certified Insurance Counselors, Inc., 2016 – 2021)

----, *Solving Troublesome Property Issues* (Austin, Society of Certified Insurance Counselors, Inc., 2016 – 2021)

----, *Split Dollar Plans* (Pittsboro, NC: Tilden and Associates, 1998)

----, *Time Element Coverages* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1992, 1996, 2001, 2008, 2012)

----, *Tips, Tricks and Traps of the CGL* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1992, 1998, 1999, 2012; Malvern: The CPCU Society, 2000 – 2021)

----, *Toxic Mold, Where Is The Coverage?* (Malvern: The CPCU Society, 2003, 2004, 2008, 2010, 2013)

----, *Umbrella and Excess Liability* (Malvern, The CPCU Society, 2004, 2013)

----, *Underwriting Workers Compensation* (Pittsboro, NC: Tilden and Associates, 2003)

----, *Utilizing the New Commercial Coverages* (Albany: Professional Insurance Agents, 2003)

----, *Will the Policy Pay for Rebuilding?* <u>Professional Agent</u> February 1998: 24 - 27

----, *Workers' Compensation* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1992, 1997, 2012)

----, *Workers' Compensation: Treating the Exposure* (Malvern: The CPCU Society, 2000)

----, *Workers' Compensation: Underwriting* (Malvern: The CPCU Society, 2000)

**CASES PAST 4 YEARS:**    *Carlos Perez Diaz, et al, v. <u>Banco Popular de Puerto Rico</u>, et al,* CAC 2017-, Court of First Instance, Superior Part of Arecebo, Commonwealth of Puerto Rico.

*Conrad Sales Group, LLC d/b/a Bay Hill Seafood v. Joseph Clyde Jenkins, Jr., Jenkins Insurance Agency, Inc. and <u>Nationwide Mutual Insurance Company,</u>* 16 CVS 493, Superior Court of Guilford County, North Carolina.

*<u>Patsy E. Holden, et al,</u> v. Tedford and Associates, LLC, et al,* CJ-2018-188, District Court of Rogers County, Oklahoma.

*<u>Cox Warehouse Furniture, LLC,</u> v. Great Lakes Insurance SE, et al,* 19-CVS-1596, Superior Court of Columbus County, North Carolina.

*Alex Chrysanithopoulos, et al, v. <u>Bay Agency Insurance Group,</u> et al,* L-1054-19, Superior Court of New Jersey, Law Division, Monmouth County.

*Pennsylvania National Mutual Casualty Insurance Company v. <u>Beach Mart, Inc. and L&L Wings, Inc.,</u>* 2:14-cv-00008-FL, United States District Court for the Eastern District of North Carolina, Eastern Division.

*Continental Western Insurance Company v. <u>ASAO Hauling LLC and Michael Krumm</u> v. Naught-Naught Insurance Agency,* 2:20-cv-4063-NKL, United States District Court for the Western District of Missouri, Central Division.

*Ecovest S&S Shelmore Development, LLC v. <u>Atlantic Shield Insurance Group, LLC,</u>* 2019-CP-10-954, Court of Common Pleas for the State of South Carolina, Charleston County.

*<u>Duke University</u> v. Endurance Risk Solutions Assurance Company,* 5:20-cv-672-BO, United States District Court for the Eastern District of North Carolina, Western Division.

*Wake Chapel Church, Inc. v. <u>Church Mutual Insurance Company,</u>* 5:21-cv-114-M, United States District Court for the Eastern District of North Carolina, Western Division.

*Wilson, et al, v. <u>Interwest Insurance Services, LLC,</u>* 34-2018-00239219, Superior Court of California In and For the County of Sacramento.

*Sinmier, LLC v. Everest Indemnity Insurance Company, et al <u>(Bankers Insurance, LLC</u>),* 3:19-CV-02854, United States District Court for the Northern District of Ohio, Western Division.

*<u>Adam Jones, et al</u> v. Crum & Forster Insurance Company,* 7:22-cv-00025-FL, United States District Court for the Eastern Division of North Carolina, Southern Division.

*John C. Bircher, III, Trustee for GMK Farms, LLC, et al v. Producers Agriculture Insurance Company and <u>Stuart Surles Insurance and Realty, Inc.,</u>* AP No. 221-00111-5-DMW, United States Bankruptcy Court, Eastern District of North Carolina, Raleigh Division.

*Allianz Global Risks US Insurance Company v. <u>Travelers Property Casualty Company of America,</u>* 3:21-cv-00576-FDW-DSC, United States District Court for the Western District of North Carolina, Charlotte Division.

*Ashley Halvorson v. <u>Melissa Halvorson, et al</u>,* 20-CV-22-363, District Court, Third Judicial District, Dodge County, Minnesota.

*Scott M. Dorfner v. <u>Insurance Planning Associates</u> v. Rue Insurance,* BUR-L-1572-51, Superior Court of New Jersey, Law Division, Burlington County.

*Boater's Emergency Service, LLC, v. Joseph B. Sebring, et al, v. <u>Rick Bersnak and The Kenan Agency,</u>* 3:21-CV-2047, United States District Court for the Northern District of Ohio, Western Division.

*EcoEléctrica, L.P. v. <u>Mapfre Praico Insurance Company,</u>* SJ2121CV06515, Superior Court, Court of First Instance, San Juan Judicial Center, Commonwealth of Puerto Rico.