IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION


No. 1:22-cv-267

BEARWATERS BREWING COMPANY,

      Plaintiff,


vs.


ASSURANT, INC. D/B/A AMERICAN BANKERS

INSURANCE COMPANY OF FLORIDA and PATTON, MORGAN & CLARK

INSURANCE AGENCY, INC.

      Defendants.

_____


**PLAINTIFF BEARWATERS BREWING COMPANY'S MEMORANDUM IN OPPOSITION TO DEFENDANT PATTON, MORGAN, & CLARK INSURANCE AGENCY, INC.'S MOTION FOR SUMMARY JUDGMENT**


Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff BearWaters

Brewing Company (BearWaters) respectfully submits this memorandum of law in opposition to

Defendant Patton, Morgan & Clark Insurance Agency, Inc.'s ("PMC") Motion for Summary

Judgment.


<u>NATURE OF THE CASE</u>

This action concerns a denial of insurance coverage for damages resulting from flood

damage to the Plaintiff's property. This Court, 42 U.S.C. Ch. 50, has exclusive jurisdiction over

claims arising from the National Flood Insurance Program, which here included all claims

against American Bankers Insurance of Florida ("American Bankers"). (D.E. 1). The Court

1

exercises supplemental jurisdiction over the claim against PMC. On September 5, 2023, American Bankers filed a motion for summary judgment as to all of Plaintiff's claims against American Bankers. (D.E. 17). American Banker's motion for summary judgement was granted on January 16, 2024. (D.E. 23). On May 3, 3024, Defendant PMC filed a motion for summary judgment. (D.E. 30).

Summary judgment would be inappropriate as there exist disputes as to material facts between the parties that need to be determined by a jury. Plaintiff has forecast evidence supporting its claim for breach of fiduciary duty against PMC, and said claim is not time barred given the factual circumstances that occurred.

<u>STATEMENT OF FACTS</u>

BearWaters operates a brewery and taproom located in Canton, North Carolina. (Ex. 1 ¶3). The brewery, at all relevant times to the allegations in the Complaint, was located at 101 Park Street. (Ex. 1 ¶3). BearWaters also owns a separate, smaller storage building adjacent to the brewery building, which at all relevant times to the allegations in the Complaint, was located at 13 Penland Street. (Ex.1 ¶4). Defendant PMC is an insurance agency located in Canton, North Carolina. (Ex. 1 §5). BearWaters first contacted PMC regarding insurance coverage in 2017. (Ex. 1 ¶6; Ex. 2 18:19:25). BearWaters specifically discussed flood insurance coverage for 101 Park Street with PMC at this time. (Ex. 1 ¶6).

In early 2019, BearWaters purchased the property located at 13 Penland Street. (Ex. 1 ¶7). PMC, at BearWaters' request, procured a flood insurance policy for the building located at 13 Penland Street in early 2019, with said effective date being from February 6, 2019 through February 6, 2020. (Ex. 1 ¶8; *see also* Ex. A to Declaration of Kevin Sandefur). The policy was

issued by American Bankers Insurance Company of Florida with NFIP Policy# 7405901022. (Ex. 1 ¶8; Ex. B to Declaration of Kevin Sandefur). The policy was renewed in subsequent years from February 6, 2020 through February 6, 2021 and again from February 6, 2021 through February 6, 2022. (Ex. 1 ¶9; Ex. C to Declaration of Kevin Sandefur).

In late 2019, BearWaters underwent a refinance with Newtek Small Business Finance, LLC. (Ex. 1 ¶10). During the refinance process, BearWaters requested that PMC procure any insurance coverage necessary to facilitate the closing of the refinance, including flood insurance. (Ex. 1 ¶11; Ex. 3 56:20-22; 74:12-16). The closing did in fact occur and flood insurance documentation was provided to Newtek. (Ex. 1 ¶13). In early 2021, after the subject policy was renewed for the year, American Bankers issued a "Revised Declaration" upon the submission of a change of address form by Ms. Connie Millsaps. (Ex. 1 ¶16; *see also* Ex. 2 26:14-23; 28:11-16). The Revised Declaration provides that the insured property is located at 101 Park Street, which is the location of the main brewery building. (Ex. 1 ¶17; Ex. C to Declaration of Kevin Sandefur). The Revised Declaration also changed the description of the building from "One Floor – Slab on Grade" to "One Floor – Elevated without Enclosure – Warehouse/Storage". *Id*. The Revised Declaration contains no reference at all to 13 Penland Street. *Id.* The building at 13 Penland Street has always been addressed separately from 101 Park Street. (Ex. 1 ¶20).

On August 17, 2021, BearWaters suffered catastrophic damage from a significant flood event when the Pigeon River escaped its banks and flooded both 101 Park Street and 13 Penland Street. (Ex. 1 ¶20; Ex. 3 75:10-25; 76-77). BearWaters submitted a claim through American Bankers, which was denied based on the subject policy only providing coverage for the building at 13 Penland Street. (Ex. 1 ¶24).

3

<u>LEGAL STANDARD</u>

Summary judgment is only appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." *Neely v. Fields,* 286 N.C. App. 65, 68; 879 S.E.2d 728, 730 (2022). The trial court "must deny the motion if there is a genuine issue of material fact." *Id. quoting from Singleton v. Stewart*, 280 N.C. 460, 464; 186 S.E.2d 400,402 (1972).

Any party that moves for summary judgment must clearly establish the lack of a triable issue of fact, and such moving party's "papers are carefully scrutinized." *Caldwell v. Deese*, 288 N.C. 375, 381; 218 S.E.2d 379, 381 (1975). All inferences of fact must be drawn against the moving party and in favor of the nonmoving party, whose "papers are on the whole indulgently regarded." *Id.* The Court need not determine an issue of fact in response to a motion for summary judgment, but must simply determine if an issue of fact exists. *Id.*

<u>ARGUMENT</u>

**I. PLAINTIFF'S CLAIM FOR BREACH OF FIDUCIARY DUTY IS NOT TIME-BARRED AND DEFENDANT PMC IS NOT ENTITLED TO SUMMARY JUDGMENT ON THAT BASIS.**

A cause of action for breach of fiduciary duty accrues at such time as a party exercising reasonable diligence would have discovered the breach of fiduciary duty. Whether a party exercised due diligence is a question for the jury in the absence of uncontradicted evidence otherwise. *Toomer v. Branch Banking & Trust Co.*, 171 N.C. App. 58, 69; 614 S.E.2d 328, 336 (2005). Where a defendant moves for summary judgment with respect to a statute of limitations defense, the non-moving party's pleadings should be construed liberally, and they should be

4

given the benefit of all relevant inferences of fact. *Trillium Ridge Condo. Ass'n v. Trillium Links & Vill., LLC*, 236 N.C. App. 478, 491; 764 S.E.2d 203, 213 (2014). Where the evidence "is sufficient to support an inference that the limitations period has not expired, the issue should be submitted to the jury." *Hatem v. Bryan*, 117 N.C. App. 722, 724; 453 S.E.2d 199, 201 (1995).

Defendant PMC relies on two cases in support of its position that the statute of limitations on BearWaters' claim has run. Both cases are factually distinct from this case. In *Holmes v. Sheppard*, the Court found that summary judgment was properly granted on a claim for negligent misrepresentation where there was record evidence that the plaintiff could have discovered the inadequate insurance coverage by his own review of the policy. *See Holmes v. Sheppard*, 255 N.C. App. 739, 746 805 S.E.2d 372, 376 (2017). In *Holmes*, the insurance company issued a policy that remained apparently unchanged until the date of loss for which the insured sought coverage. *Id.* at 742; 805 S.E.2d at 372. Additionally, the insured acknowledged in his deposition that he never read the policy, nor was there any evidence of any other due diligence expended by the insured. *Id.* Interestingly, while the Court did uphold the grant of summary judgment for the claim of negligent misrepresentation, the Court found that summary judgment was *inappropriate* as to a claim for negligence where it was for a jury to determine whether the actions of the parties gave rise to a duty on behalf of the insurance agent. *Id* at 744-745; 375. On that claim, the Court found that the insured presented competent evidence of a request that the policy contain a vacancy exclusion, which if believed by a jury, could support the existence of a duty. *Id.*

Here, the subject policy did not remain unchanged. Rather, in 2021, after the flood policy renewal was sent to BearWaters, a second "Revised Declaration" indicated that the insured property was located at 101 Park Street. Also, BearWaters has forecast evidence that a request

5

was made for flood insurance coverage on 101 Park Street. The evidence of this is such that the case at bar is more similar to the facts on which the *Holmes* court relied in *denying* summary judgment with respect to the claim for negligence against the insurance broker.

In *Catlin Specialty Ins. Co. v. Tegol, Inc.*, this Court interpreted *Holmes* within the context of a breach of fiduciary duty claim, ultimately determining that the statute of limitations on said claim had expired. Case No. 3:14-CV-00607-GCM-DCK, 2018 WL 4329293, *3-4 (Sept. 11, 2018 W.D.N.C.). The ruling on the breach of fiduciary duty claim in that case hinged on when the cause of action accrued. In that case, there was evidence that the insured party had been provided with a copy of the policy and acknowledged having not read the policy at the time of receipt. *Id.*

While *Catlin* facially appears similar to the facts here, there is a key factual distinction that renders summary judgment improper. BearWaters has forecast evidence that it did in fact seek flood insurance coverage from PMC on the property at 101 Park Street. Later, BearWaters sought flood insurance coverage for the property at 13 Penland Street. PMC procured a policy effective February 6, 2019, that identified the insured property located at 13 Penland Street. At that point, a review of the 2019 policy would have only confirmed for BearWaters that a policy had been issued on 13 Penland Street. PMC would have the Court view the issue as a policy being issued for the wrong building. However, BearWaters owned two buildings and needed insurance for both. In other words, the breach forecast by BearWaters does not rest in procuring coverage for the wrong building, but for failing to procure insurance for 101 Park Street. A review of the initial 13 Penland Street policy would not have made it clear to BearWaters that there was a breach regarding the request for insurance on 101 Park Street.

6

The 2021 policy renewal that was initially issued provided that the insured property address was 13 Penland Street and identified the insured property as "One Floor – Slab on Grade". *Id*. However, in 2021, after the 2021 renewal was complete, BearWaters received a "Revised Declaration" that identified the insured property address as 101 Park Street. (Ex. 1 ¶15; Ex. C to Declaration of Kevin Sandefur). It further identifies the property as "One Floor – Elevated without Enclosure – Warehouse/Storage". *Id*.

PMC takes the position that the statute of limitations ran at the time of the issuance of the subject policy in 2019; however, in 2019, BearWaters sought flood insurance specifically for 13 Penland Street. A review of the declarations page, as Mr. Sandefur testified that he did, would have simply confirmed insurance coverage on 13 Penland Street. Later, as part of the refinance, Mr. Sandefur specifically requested that PMC obtain the necessary flood insurance coverage to complete the refinance, which did ultimately close. (Ex. 1 ¶¶11-14). After the refinance, a renewal was issued from American Bankers that still identified 13 Penland Street as the insured property, which may lend itself to PMC's position; however, PMC, in its motion and accompanying documents, overlooks the existence of the "Revised Declaration."

While an insured in North Carolina must exercise reasonable diligence in reviewing insurance documents to understand the coverage, insured parties are not tasked with having sophisticated knowledge of insurance law or procedures. Here, the "Revised Declaration" issued to BearWaters appears facially to provide coverage to the insured property located at 101 Park Street. The property at 13 Penland Street is not referenced at all in the "Revised Declaration." For BearWaters to determine that the policy did not provide coverage to their property at 101 Park Street, it would be necessary for BearWaters to have a sophisticated understanding of the procedure and policies of the National Flood Insurance Program (NFIP). A jury could find it

7

reasonable that BearWaters, while holding two declaration pages identifying two different properties, believed there to be coverage on both buildings. A jury may find it reasonable that BearWaters, being in the business of brewing and selling beer, was not aware that the NFIP requires a separate policy with a separate NFIP number for each individual building covered. In short, the question of whether BearWaters exercised proper due diligence in discovering PMC's breach of duty is a question for the jury, as a reasonable jury could certainly find that the "Revised Declaration" would not have put BearWaters on notice of the breach. Or in the alternative, a jury could find that the issuance of the 2019 policy that covered 13 Penland Street was not, in fact, the triggering event that began the statute of limitations.

Given the significant issues of material facts, there is more than sufficient evidence from which a jury could find that the statute of limitations on BearWater's claim has not run, rendering summary judgment improper.

II. **BEARWATERS HAS FORECAST SUFFICIENT EVIDENCE OF PMC'S BREACH OF FIDUCIARY DUTY SUCH THAT SUMMARY JUDGMENT IS NOT PROPER.**

*A. BearWaters has forecast sufficient evidence of PMC's breach of fiduciary duty for failing to procure the coverage requested by BearWaters.*

"An insurance agent acts as a fiduciary with respect to procuring insurance for an insured." *Phillips by Phillips v. State Farm mut. Auto Ins. Co.*, 129 N.C. App. 111, 113; 497 S.E.2d 325, 327 (1998). This duty includes procuring insurance for an insured at their request. *Id.* That duty requires that an agent or broker "use reasonable skill, care and diligence" to procure insurance against "a designated risk." *Kaperonis v. Underwriters at Lloyd's, London*, 25 N.C. App. 119, 128; 212 S.E.2d 532, 538 (1975).

Likewise, the duty PMC owed to BearWaters was to procure the insurance coverage requested by BearWaters. BearWaters, through its president Kevin Sandefur, requested that PMC procure a flood insurance policy for its property at 101 Park Street. As far back as 2017, there were communications with Ms. Connie Millsaps at PMC regarding flood insurance. Mr. Sandefur forwarded a copy of the flood insurance policy then in place for 101 Park Street to PMC so that PMC so could quote and procure coverage.

After the initial communications regarding 101 Park Street, BearWaters subsequently sought flood insurance coverage from PMC for their building at 13 Penland Street, which was in fact procured and renewed for subsequent years. In 2021, BearWaters received a renewal of the policy for 13 Penland Street. However, shortly after the renewal, BearWaters received a "Revised Declaration" indicating the insured property was 101 Park Street. As a result, for the year 2021, BearWaters received two declarations sheets from American Bankers, one that showed an insured property address of 13 Penland Street and one that showed an insured property address of 101 Park Street.

In her deposition, Connie Millsaps testified that the first time she was contacted regarding procuring flood insurance coverage was in 2018 when BearWaters requested coverage for 13 Penland Street. (Ex. 2 23:2-4). However, in direct contradiction to that, Kevin Sandefur has forecast testimony that he contacted PMC/Ms. Millsaps about flood insurance coverage in 2017. There is also an email providing documentary evidence of discussions surrounding flood insurance wherein Ms. Millsaps provided specific advice to BearWaters about flood insurance coverage and even how to modify the brewery tanks located at 101 Park Street to minimize the cost of insurance. It would rest in the sound discretion of the jury to weigh those two

9

contradictory statements, and the credibility of the witnesses making those statements, to determine if in fact a request was made to procure insurance.

A final determination as to the existence of a duty and whether the same was breached is not before the Court at this stage. Rather, the Court must simply determine whether sufficient evidence has been forecast as to the existence/breach of a duty such that there remains an issue for the jury to determine. Clearly, such evidence has been forecast from the record, as such summary judgment would be inappropriate. The determination of the existence/breach of duty in this case rests with the jury.

B.      *BearWaters has forecast sufficient evidence of PMC's breach of duty for failing to properly advise BearWaters about its flood insurance coverage.*

Although generally an insurance agent has no duty to advise a customer regarding insurance, however an implied duty to advise may be shown where 1) the agent received additional compensation beyond the premium payment; 2) the insured made a clear request for advice; or 3) there is a course of dealings over an extended period of time which would put an objectively reasonable insurance agent on notice that advice is being sought and relied on. *Cobb v. Pa. Life. Ins. Co.*, 215 N.C. 268, 275; 715 S.E.2d 541, 548 (2011).

BearWaters contacted PMC for flood insurance coverage in 2017 specifically for 101 Park Street. PMC, through agent Connie Millsaps sent an email to BearWaters specifically advising BearWaters about flood insurance coverage and how to respond in the event of a flood. PMC also offered via email to procure flood insurance for BearWaters. In late 2019, after PMC had already procured a flood insurance policy for 13 Penland Street, BearWaters underwent a refinance of both the property at 101 Park Street and 13 Penland Street. During that process, BearWaters specifically requested that PMC procure any insurance necessary to complete the

closing. Ms. Millsaps' testimony in her deposition is that she was contacted around the time of the refinance solely to change the mortgage company on the policy.

It is a question for the jury to evaluate the competency of the evidence. If the jury were to believe the testimony of Ms. Millsaps, that she was only asked to change the name of the mortgage company on the 13 Penland Street property, then a jury could find that no elevated duty existed and therefore no breach occurred. On the contrary, if a jury believes the testimony of Mr. Sandefur, that he requested PMC to procure all insurance coverage necessary to complete the refinance, a jury could find that such a request constituted a "clear request for advice" thus triggering a heightened duty. *Id.* Such a crucial dispute as to a material fact renders summary judgment in favor of PMC improper.

<u>CONCLUSION</u>

Based on the forgoing, Plaintiff requests the Court deny PMC's motion for summary judgment and allow the significant issues of material fact outlined above to be determined by a jury.

Respectfully submitted this the 17th day of May, 2024.

Attorney for Plaintiff

s/Mark A. Wilson
NC Bar No.: 47197
Hyde Brown Wilson, P.A.
675 N. Main Street
Waynesville, NC 28786
P. 828-452-2556
mark@hbwlaw.com

11

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Plaintiff's Memorandum in Opposition to Patton, Morgan & Clark Insurance Agency, Inc's Motion for Summary Judgment was electronically filed with the Clerk of Court by using the CM/ECF System which will send notification and serve same upon counsel of for the Defendants.

Dated: May 17, 2024.

Attorney for Plaintiff

s/Mark A. Wilson

NC Bar No.: 47197
Hyde Brown Wilson, P.A.
675 N. Main Street
Waynesville, NC 28786
P. 828-452-2556
mark@hbwlaw.com

12