# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION

## Case No. 1:22-CV-00267-MR-WCM

| | |
|---|---|
| **BEARWATERS BREWING COMPANY,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ASSURANT, INC. D/B/A AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA and PATTON, MORGAN & CLARK INSURANCE AGENCY, INC.,**<br><br>**Defendants.** | **DEFENDANT PATTON, MORGAN & CLARK INSURANCE AGENCY, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTIONS *IN LIMINE*** |

Pursuant to Rule 7.1(c) of the Local Rules Governing Civil Cases for the United States District Court for the Western District of North Carolina and this Honorable Court's Pretrial Order and Case Management Plan entered in this matter on May 5, 2023 (D.E. 14), Defendant Patton, Morgan & Clark Insurance Agency, Inc. ("PMC"), by and through undersigned counsel, respectfully submits this Memorandum of Law in Support of its Motions *In Limine*, filed contemporaneously with this Memorandum.

<u>**ARGUMENT**</u>

**I.      ANY REFERENCE TO OR EVIDENCE OF THE EXISTENCE OF LIABILITY INSURANCE SHOULD BE EXCLUDED.**

Pursuant to Rules 402, 403, and 411 of the Federal Rules of Evidence, any reference to or evidence that Defendant PMC has liability insurance or money to set aside to pay claims is irrelevant, inadmissible, and highly prejudicial.  Rule 411 states as follows:

> Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully. But the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control.

Fed. R. Evid. 411; *see also* Fed. R. Evid. 402-403.  Evidence of, or even the mention of, liability insurance is impermissible. *Id*. It is immaterial to any issue involved in this lawsuit whether or not at the time of the complained of occurrence PMC was covered by any policy of insurance. Were the circumstances regarding the existence of liability insurance to be made known to the jury, it would be highly improper and prejudicial for Defendant PMC. See Fed. R. Evid. 402-403, 411.

For the foregoing reasons, PMC respectfully requests that this Court enter an Order directing Plaintiff to refrain from making reference to PMC's liability insurance or alleging any fact suggesting PMC has insurance. Undersigned counsel has conferred with Plaintiff's counsel on this motion, and Plaintiff has consented and

2

agreed that no evidence shall be presented concerning the existence of liability insurance for PMC.

## II. PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING ANY TESTIMONY OF BARBARA ROCCO OR CALLING BARBARA ROCCO AS A WITNESS.

Pursuant to Rules 401 and 402 of the Federal Rules of Evidence, any testimony or calling of Barbara Rocco as a witness is irrelevant and inadmissible in this action.

Plaintiff has identified Barbara Rocco, a claims specialist for PMC's errors and omissions insurer, as an individual with discoverable information or first-hand knowledge of information on its Rule 26(a)(1) initial disclosures and within its response to PMC's discovery requests. Rule 401 provides that evidence is relevant if: "(a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Ms. Rocco is the claims specialist for PMC's errors and omissions insurer and was unaware of the facts at issue until the Complaint was filed. As such, Ms. Rocco's testimony would not make any fact more or less probable and would not be of consequence in determining the outcome of the action.

Rule 402 states that "irrelevant evidence is not admissible." Fed. R. Evid. 402. Since calling Ms. Rocco as a witness or presenting her testimony would be irrelevant under Rule 401, Plaintiff should be precluded from offering any testimony

3

of Ms. Rocco or calling Ms. Rocco as a witness under Rule 402. Further, allowing Plaintiff to call Ms. Rocco as a witness at trial would result in prejudice to PMC as it would reveal to the jury the existence of PMC's liability insurance. See Section I., *supra.*; Fed. R. Evid. 402-403, 411. Undersigned counsel has conferred with Plaintiff's counsel on this particular motion, and Plaintiff has consented that no evidence or testimony from or concerning PMC's insurer's claims specialist, Barbara Rocco, shall be presented at trial.

## III. PLAINTIFF SHOULD BE PRECLUDED FROM PRESENTING ANY EVIDENCE OF ACTUAL MONETARY DAMAGES.

Rule 26 of the Federal Rules of Civil Procedure requires a party to disclose "a computation of each category of damages claimed by the disclosing party--who must also make available for inspection and copying…the documents or other evidentiary materials…on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. 26(a)(1)(A)(iii). "A party cannot fulfill this requirement by providing undifferentiated financial statements; it requires a computation, ***supported by documents***." *Silicon Knights, Inc. v. Epic Games, Inc.*, 2012 WL 1596722, *1 (E.D.N.C. May 7, 2012) (internal citations omitted) (emphasis added). "[A] party's Rule 26(a)(1)(A)(iii) disclosure must state the types of damages that the party seeks, must contain a specific computation of each category, ***and must include documents to support the computations***." *Intercollegiate Women's Lacrosse Coaches Association v. Corrigan Sports*

4

*Enterprises, Inc.*, 2023 WL 6800328, *1 (M.D.N.C. Oct. 12, 2023) (internal citations omitted) (emphasis added).

Under North Carolina law, "[t]he burden of proving damages is on the party seeking them…[a]s part of its burden, the party seeking damages must show that the amount of damages is based upon a standard that will allow the finder of fact to calculate the amount of damages with reasonable certainty." *Olivetti Corp. v. Ames Business Systems, Inc.*, 319 N.C. 534, 547-548, 356 S.E.2d 578, 586 (1987). "[T]he reasonable certainty standard requires something more than 'hypothetical or speculative forecasts...'" *Lord of Shalford v. Shelley's Jewelry, Inc.*, 127 F. Supp.2d 779, 788 (W.D.N.C. 2000) (quoting *Southern Bldg. Maintenance, Inc. v. Osborne*, 127 N.C. App. 327, 332, 489 S.E.2d 892, 896 (1997)). "Absolute certainty is not required, but evidence of damages must be sufficiently specific and complete to permit the jury to arrive at a reasonable conclusion." *Tillis v. Cotton Mills*, 251 N.C. 359, 366, 111 S.E.2d 606, 612 (1959).

On April 20, 2023, Plaintiff served its Rule 26(a)(1) initial disclosures in this matter, disclosing in pertinent part:

iii. A computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

    a. $133,100.00. Being the maximum coverage allowed under the policy. Repair costs following the flooding exceeded this coverage amount.

    b. Punitive damages

    c. Attorney fees as allowed by applicable law

(See **Exhibit A**). Plaintiff did not include with its 26(a)(1)(A)(iii) disclosure documentation supporting its claimed damages.

On April 30, 2024— ten months after PMC served written discovery on Plaintiff requesting its alleged itemized damages and a little over a year after Plaintiff's initial disclosures— Plaintiff finally served its response with the requested information, but only after this Court granted PMC's Motion to Compel (D.E. 28). PMC's interrogatory, and Plaintiff's April 30, 2024 response, stated:

4. For each of the Defendants in this action, please list separately and itemize, and provide any and all support for, the total amount of any damages You claim to have suffered as a result of the incidents and transactions referenced in the Complaint, and the method(s) of computation by which You calculate such amounts.

6

**ANSWER:**

Plaintiff has provided a binder of all receipts/invoices spent on repair work for building including receipts from Cox Painting and Repairs, Massey Electric, and other companies hired to do work as we were able to pay them. Damages were as follows:

| | |
|---|---|
| Building clean out and removal: | $8,890.90 |
| Critical Manufacturing and Kitchen Equipment Loss: | $74,123.35 |
| Exterior Wall cleaning, painting, and repairs: | $11,634.10 |
| Interior wall and floor repairs: | $29,080.34 |
| Electrical repairs: | $8,223.40 |
| Plumbing Repairs: | $5,734.22 |
| | |
| Total Receipts: | $137,686.21. |

(See **Exhibit B**).

On March 4, 2024, Plaintiff produced over 200 pages of bank statements (which include copies of checks) and receipts that it contends support its alleged damages. The bank statements appear to relate to Plaintiff's checking account and include a list of deposits and debits for all of Plaintiff's purchases for a given month. The receipts appear to include copies of receipts for purchases at various retail stores— *e.g.*, Lowe's Home Center, Sherwin-Williams, Hometown Hardware, etc. Some of Plaintiff's receipts pre-date the August 17, 2021 flood that is alleged to have directly caused Plaintiff's damages, some post-date the flood by nearly two years, some include unrelated purchases— *e.g.*, bottles of water and Gatorade, a propane tank refill, and wasp/hornet spray— and some are just simply indecipherable. None of Plaintiff's bank statements and receipts appear to explain

7

its claimed damages figure. (See **__Exhibit C__**).[1] Indeed, the produced receipts do not add up to either of Plaintiff's damages figures. Significantly, as of the date of filing of this Motion, and despite undersigned counsel's inquiries during a call with Plaintiff's counsel concerning this particular Motion, Plaintiff's counsel has been unable to explain how these documents support either of Plaintiff's alleged damages figures, or, if any do, which precise documents provide such support.

Further, Plaintiff could not provide any reliable testimony during its Rule 30(b)(6) deposition testimony supporting its alleged damages, instead estimating the cost of repairs to its brewery building. (See Exhibit D pp 177-178).

Where documents and deposition testimony fail to demonstrate *__how__* Plaintiff arrived at its alleged damages, Plaintiff falls short of its Rule 26(a)(1)(A)(iii) obligations. *See Intercollegiate Women's*, 698 F.Supp.3d 814, 819. Moreover, it is not PMC's responsibility "to glean a computation of each category of [Plaintiff's] damages" from the more than 200 pages of documents disclosed during discovery. *See Silicon Knights*, 2012 WL 1596722, *7.

---

[1] Rather than overburden the Court's electronic filing docket with the 200+ pages of "damages documents," Exhibit C includes a sample of the receipts. The bank statements are not included in Exhibit C since they contain sensitive account information as well as Plaintiff's overall credit and debit activity. Unless instructed otherwise, undersigned counsel will bring to the August 16, 2024 pre-trial conference a hardcopy of all of the 200+ pages of "damages documents," including the referenced bank statements, for the Court's review and consideration.

8

Though PMC has requested it, Plaintiff has failed to provide a complete calculation and analysis of its actual damages as is required under Rule 26. The information Plaintiff has provided to date lacks reasonable certainty. PMC has no notice concerning the calculations Plaintiff has used to determine its damages, and therefore, PMC cannot meet any such evidence propounded by Plaintiff via cross examination and via PMC's own evidence during its case-in-chief (such as its own expert witness on damages). Thus, allowing Plaintiff to present its analysis at trial would surprise and prejudice PMC. *See id.* Additionally, the trial of this matter is approximately one month away and expert disclosure and discovery deadlines have long since expired. Thus, even if Plaintiff were allowed to immediately provide PMC with a new damages computation supported by documentary evidence, PMC would still be prejudiced, as it is now unable to take discovery concerning any such new evidence and meet it with its own damages expert. Accordingly, Plaintiff should be precluded from offering evidence of, or arguments about, its actual monetary damages at trial. If Plaintiff prevails on its claim, it should only be entitled to receive an award of nominal damages (i.e., $1.00).

Undersigned counsel has conferred with Plaintiff's counsel on this particular motion, and at the time of filing of same, Plaintiff does not consent.

**IV. ALTERNATIVELY (TO MOTION NO. III ABOVE), PLAINTIFF SHOULD NOT BE ALLOWED TO PRESENT ANY EVIDENCE OF, OR ARGUMENT ABOUT, MONETARY DAMAGES ABOVE THOSE PREVIOUSLY DISCLOSED.**

As stated in Motion No. IV above, Plaintiff initially disclosed that it is seeking a total of $133,100 in actual damages, plus punitive damages. (See Exhibit A). Though it provided a higher (and speculative) estimate of damages in its deposition testimony, Plaintiff also doubled-down on its position that its actual damages are limited to the policy limits of $133,100 in the subject flood policy. Further, under oath during its Rule 30(b)(6) deposition, Plaintiff disclaimed any pursuit of punitive damages. (See **Exhibit D** pp 179-181).

After Plaintiff's deposition, and on April 30, 2024, Plaintiff supplemented its written discovery responses with a damages calculation of $137,686.21.

Accordingly, and in the alternative to Motion No. IV above, Plaintiff should be precluded from surprising PMC with any evidence of, or argument about, a damages amount above $133,100, or at least above $137,686.21. (See Exhibit B).

Undersigned counsel has conferred with Plaintiff's counsel on this particular motion, and at the time of filing of same, Plaintiff does not consent.

**V. EVIDENCE CONCERNING CLAIMS NOT RAISED IN PLAINTIFF'S COMPLAINT SHOULD BE EXCLUDED.**

It is anticipated that Plaintiff will attempt to present evidence of, and argument about, an alleged request that PMC secure a flood insurance policy specifically for

10

the Plaintiff's brewery building at 101 Park Street. Though in North Carolina an insurance agent has a general, threshold duty to procure insurance coverage specifically requested by an insured and to accurately name the insured in such policy, Plaintiff has not alleged such a claim here. *See Phillips by Phillips v. State Farm Mut. Auto. Ins. Co*., 129 N.C. App. 111, 113, 497 S.E.2d 325, 327 (1998). Instead, Plaintiff has specifically, ***and only,*** pled a breach of the implied fiduciary duty on the part of PMC to advise Plaintiff ***on coverage it did not request or have***:

THIRD CLAIM FOR RELIEF
(Breach of Fiduciary Duty)
(*Defendant Patton*)
(*pleaded in the alternative*)

31. All prior paragraphs are incorporated herein by reference.

32. If it is found that the flood insurance policy provided by Defendant Assurant does not provide coverage for 101 Park Street, Defendant Patton, acting as an insurance broker for BearWaters, was in a position of confidence with respect to identifying proper coverage for BearWaters needs.

33. BearWaters relied on Defendant Patton's specialized experience in the insurance field.

34. Defendant Patton breached its fiduciary duty to by failing to ensure adequate coverage was provided for BearWaters' assets.

(D.E. 1). Nowhere in Plaintiff's Complaint did Plaintiff allege that PMC failed to procure requested insurance.

The claims of failure to procure and failure to advise are distinct, as the latter requires a showing that "(1) the agent received consideration beyond mere payment

11

of the premium; (2) the insured made a clear request for advice; or (3) there is a course of dealings over an extended period of time which would put an objectively reasonable insurance agent on notice that his advice [was]being sought and relied on." *IDS Property Casualty Insurance Company v. Lu*, 2016 WL 1532235, *4 (E.D.N.C. April 15, 2016). The failure to procure claim does not require this showing. PMC's responsive pleading in this matter met Plaintiff's failure to advise claim, and was not intended to meet any hypothetical failure to procure claim.

Further, Plaintiff's sworn 30(b)(6) testimony appears to directly contradict any purported failure to procure claim, as Plaintiff repeatedly insisted that PMC did, in fact, procure flood coverage for Plaintiff's brewery building at 101 Park Street. (See Exhibit D pp 125-126, 129, 155).

Allowing Plaintiff to introduce a separate allegation not previously pled in Plaintiff's original Complaint could confuse or mislead the jury and would unduly prejudice PMC. Further, evidence or reference to a claim for failure to procure— *e.g.*, evidence or testimony that Plaintiff made a specific request for flood insurance for its brewery building— should be excluded pursuant to Rules 401, 402 and 403 of the Federal Rules of Evidence on the basis that it is irrelevant and would not have a tendency to make the existence of any fact that is of consequence to the determination of the claim pled more or less probable. Any probative value the Court may find to exist with respect to such evidence or reference is substantially

outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury and should be excluded. Alternatively, should the Court allow evidence of, and argument about, an alleged failure to procure insurance, PMC respectfully requests that the Court allow it to amend its responsive pleading to assert any affirmative defenses, including contributory negligence based on Plaintiff's failure to read its policy.

Undersigned counsel has conferred with Plaintiff's counsel on this particular motion, and at the time of filing of same, Plaintiff does not consent.

## VI. ANY EXPERT WITNESS OR EXPERT WITNESS OPINIONS NOT PREVIOUSLY DISCLOSED BY PLAINTIFF IN DISCOVERY SHOULD BE EXCLUDED.

PMC moves, pursuant to Rule 26 and Rule 37 of the Federal Rules of Civil Procedure, for an Order prohibiting Plaintiff from calling any expert witnesses or soliciting expert testimony or opinions from any individual not so designated by Plaintiff in accordance with the Court's Pretrial Order and Case Management Plan entered in this matter (D.E. 14).

Rule 26(a)(2)(A) of the Federal Rules of Civil Procedure requires a party to "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). Pursuant to the Pretrial Order and Case Management Plan (D.E. 14) and subsequent text-only order entered by the court on August 21, 2023, granting

Plaintiff's Motion for entry of a Revised Scheduling Order (D.E. 16), the deadline for Plaintiff to designate its experts in this matter was September 22, 2023.

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Plaintiff failed to identify or designate any expert witness in this matter. Plaintiff should therefore be disallowed from calling any expert witnesses or offering expert testimony or opinions at trial.

Undersigned counsel has conferred with Plaintiff's counsel on this particular motion, and Plaintiff has consented and agreed that there shall be no presentation of expert opinion testimony that has not been previously disclosed to PMC.

## VII. ANY TESTIMONY FROM UNQUALIFIED LAY WITNESSES CONCERNING THE DUTY OF INSURANCE AGENTS SHOULD BE EXCLUDED.

PMC anticipates that Plaintiff and other lay witnesses may attempt to give conclusory testimony about PMC's duty as an insurance agent to Plaintiff. Rule 701 of the Federal Rules of Evidence governs the admissibility of opinion testimony by lay witnesses. Pursuant to Rule 701:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a) rationally based on the witness's perception;

14

(b) helpful to clearly understanding the witness's testimony or to determining a fact at issue: and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Thus, to be admissible, proposed lay witness testimony must meet all three criteria. Failure to meet even one criterion is grounds for exclusion.

Lay testimony "results from a process of reasoning familiar with everyday life," while expert testimony "results from a process of reasoning which can be mastered only by specialists in the field." *See* Notes to Rule 701 (internal citations omitted). "Under North Carolina law, expert testimony as to the applicable standard of care generally is required whenever a negligence action is brought against a professional or other individual who works in an area where the standard of care involves 'highly specialized knowledge with respect to which a layman can have no reliable information.'" *Wood v. Berne*, 2010 WL 11565506, *4 (E.D.N.C. March 23, 2010) (internal citations omitted).

One need look no further than the education and training of Connie Millsaps to appreciate the highly-specialized nature of an insurance agent's knowledge:

Q  What was that insurance program, the insurance college that you went to? Can you tell me a little bit about what that looks like.

A  That is weeklong insurance school, eight to five Monday through Friday. Then you take like a test at the end, and once you pass the class then you go and you take a state test in order to get your insurance license. And I did that the Saturday when I finished the class.

(See **Exhibit E** p 6).

As discussed *supra.*, an insurance agent's implied duty to advise arises when "(1) the agent received consideration beyond mere payment of the premium; (2) the insured made a clear request for advice; or (3) there is a course of dealings over an extended period of time which would put ***an objectively reasonable insurance agent*** on notice that his advice [was] being sought and relied on." *Cobb v. Pennsylvania Life Ins. Co.*, 215 N.C. App. 268, 275, 715 S.E.2d 541, 548 (2011) (emphasis added). Only testimony from a witness with the education, training and experience of an insurance agent could reliably establish what would put "an objectively reasonable" agent on notice.

Any testimony regarding PMC's fiduciary duty to advise Plaintiff requires specialized knowledge within the insurance industry that is unfamiliar to most lay persons. Plaintiff, and its representatives, for example, do not have the training and experience within the insurance industry to qualify under Rule 702 of the Federal

16

Rules of Evidence to express an opinion concerning the insurance agent's duties relevant to this matter. Thus, PMC respectfully requests that the Court instruct Plaintiff that witnesses without training and experience within the insurance industry may not give testimony that amounts to expert opinion on the duty of insurance agents to advise, and that the Court exclude any such evidence as it would not be competent and would have a tendency to confuse the issues or mislead the jury.

Undersigned counsel has conferred with Plaintiff's counsel on this particular motion, and at the time of filing of same, Plaintiff does not consent.

## <u>CONCLUSION</u>

PMC respectfully requests that this Court enter an order granting PMC's Motions *In Limine* and instructing the Plaintiff, witnesses and counsel not to mention or refer to during jury selection, the presentation of opening statements, the examination of witnesses, closing arguments or at any other time in the presence of the jury, and not to offer any purported testimony or exhibits regarding or relating to, the foregoing.

17

This 2nd day of August, 2024.

/s/ Jason R. Benton
Jason R. Benton
NC State Bar No. 27710
Caroline B. Barrineau
NC State Bar No. 51571
PARKER POE ADAMS & BERNSTEIN LLP
620 S Tryon St., Suite 800
Charlotte, NC  28202
Telephone: 704-372-9000
Facsimile:  704-334-4706
Email: jasonbenton@parkerpoe.com
Email: carolinebarrineau@parkerpoe.com

*Counsel for Defendant Patton, Morgan & Clark Insurance Agency, Inc.*

PPAB 11270295v1

# ARTIFICIAL INTELLIGENCE CERTIFICATION

Pursuant to the Western District of North Carolina's June 18, 2024 Standing Order re: Use of Artificial Intelligence, the undersigned hereby certifies that:

1.      No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg; and

2.      Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This 2nd day of August, 2024.

/s/ Jason R. Benton
Jason R. Benton
NC State Bar No. 27710
Caroline B. Barrineau
NC State Bar No. 51571
PARKER POE ADAMS & BERNSTEIN LLP
620 S Tryon St., Suite 800
Charlotte, NC  28202
Telephone: 704-372-9000
Facsimile:  704-334-4706
Email: jasonbenton@parkerpoe.com
Email: carolinebarrineau@parkerpoe.com

*Counsel for Defendant Patton, Morgan & Clark Insurance Agency, Inc.*

19

# <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing **Defendant Patton, Morgan & Clark Insurance Agency's Memorandum of Law in Support of its Motions *In Limine*** was electronically filed with the Clerk of the Court by using the CM/ECF System which will send notification and serve same upon counsel of record via the Court's electronic case filing system.

This 2nd day of August, 2024.

/s/ Jason R. Benton
Jason R. Benton
NC State Bar No. 27710
Caroline B. Barrineau
NC State Bar No. 51571
PARKER POE ADAMS & BERNSTEIN LLP
620 S Tryon St., Suite 800
Charlotte, NC 28202
Telephone: 704-372-9000
Facsimile: 704-334-4706
Email: jasonbenton@parkerpoe.com
Email: carolinebarrineau@parkerpoe.com

*Counsel for Defendant Patton, Morgan & Clark Insurance Agency, Inc.*

20